IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

JENNIFER KAYE BYERS,                    §
                                        §
                    Plaintiff,          §
                                        §  Civil Action No. 3:09-CV-1792-D
VS.                                     §
                                        §
NAVARRO COUNTY, et al.,                 §
                                        §
                    Defendants.         §

MEMORANDUM OPINION
AND ORDER

       A pretrial detainee with mental issues who was placed by jail officials in a restraint

chair and in a cell with a detainee who physically attacked her brings this action under 42

U.S.C. § 1983 and state law against a county and four individual jail employees for injuries

she allegedly suffered.   For the reasons that follow—including on the basis that the

individual defendants are entitled to qualified immunity—the court grants partial summary

judgment and raises *sua sponte* that defendants are entitled to summary judgment as to

plaintiff's remaining federal-law claims.[1]  The court declines to reach plaintiff's pendent

state-law claims.

I

       This is an action by plaintiff Jennifer Kaye Byers ("Byers") against defendants

Navarro County d/b/a Navarro County Sheriff's Department ("Navarro County"), Richard

_____

       [1]In view of this decision, defendant Brenda O'Pry's January 6, 2012 motion for leave
to file motion for summary judgment is denied without prejudice as moot.

Holloway ("Holloway"), Cindy Hightower ("Hightower"), Mervie Henry ("Henry"), and Brenda O'Pry ("O'Pry")[2] to recover on claims under § 1983 and state law.[3]  Byers was confined as a pretrial detainee at the Navarro County jail from approximately March 2008 to May 23, 2008.  Holloway was formerly employed as a deputy sheriff, Hightower and Henry are employed as jailers at the Navarro County jail, and O'Pry was formerly employed at the jail.  Byers avers that defendants are liable for their conduct during her pretrial detention.  She alleges an excessive force claim under § 1983 against Holloway, Hightower, Henry, and O'Pry; she sues Navarro County under § 1983 for the use of excessive force by county officials; she alleges under § 1983 that the individual defendants failed to protect her against a fellow detainee; she asserts that Navarro County is liable under § 1983 for denying her medical and psychiatric care;[4] and she sues all defendants under state law for assault, battery, and other state-law claims.

---

[2]In certain documents in the summary judgment record, plaintiff's first name is spelled "Jenniffer."  Some documents refer to Henry as "Merdie" rather than "Mervie."  O'Pry formerly went by the name Brenda Aulds, and certain documents refer to her by her former name.

[3]In recounting the factual background, the court summarizes the evidence in the light most favorable to Byers as the summary judgment nonmovant and draws all reasonable inferences in her favor.  *See, e.g., Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

[4]Although Byers does not specifically address whether her claim for denial of medical and psychiatric care is asserted solely against Navarro County or against all defendants, the court concludes from her complaint that the claim is brought only against Navarro County. *See infra* § XIII(C).

All defendants except for O'Pry move for summary judgment.[5]  Byers opposes the motion.

## II

Because defendants are moving for summary judgment on claims as to which Byers will bear the burden of proof at trial, they can obtain summary judgment as to the claim in question by pointing the court to the absence of evidence on any essential element of the claim.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once they do so, Byers must go beyond her pleadings and designate specific facts demonstrating that there is a genuine issue for trial.  *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).  An issue is genuine if the evidence is such that a reasonable jury could return a verdict for Byers on the claim in question.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Byers' failure to produce proof as to any essential element of the claim renders all other facts regarding that claim immaterial.  *See Trugreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.).  Summary judgment for defendants is mandatory as to the claim in question if Byers fails to meet this burden.  *Little*, 37 F.3d at 1076.

The court can raise *sua sponte* that summary judgment is warranted on a particular claim, provided it affords Byers notice and a fair opportunity to respond.  *See, e.g., Jackson v. Fed. Express Corp.*, 2006 WL 680471, at *9 (N.D. Tex. Mar. 14, 2006) (Fitzwater, J.)

---

[5]As noted, *see supra* note 1, O'Pry has filed a motion for leave to file a summary judgment motion.

(citing *Arkwright-Boston Mfrs. Mut. Ins. Co. v. Aries Marine Corp.*, 932 F.2d 442, 445 (5th Cir. 1991)).

### III

Byers asserts an excessive force claim under § 1983 against Holloway, Hightower, Henry (collectively, the "individual defendants"), and O'Pry. The individual defendants move for summary judgment based on qualified immunity,[6] and the court raises *sua sponte* that O'Pry is also entitled to summary judgment on this basis.

### A

"Section 1983 creates a private right of action for redressing the violation of federal law by those acting under color of state law." *Colson v. Grohman*, 174 F.3d 498, 504 n.2 (5th Cir. 1999) (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 82 (1984)). "Rather than creating substantive rights, § 1983 simply provides a remedy for the rights that it designates. Thus, an underlying constitutional or statutory violation is a predicate to

---

[6]Byers maintains that the individual defendants cannot rely on the defense of qualified immunity because they have not adequately raised it. The court disagrees. The individual defendants raised qualified immunity in their answer by pleading that they are "entitled to assert the defense of qualified immunity" because they are "government officer[s] exercising discretionary authority," "unless at the time, and under the circumstances of the challenged conduct, all reasonable officers would have realized that the challenged conduct was prohibited by the federal law on which the suit is founded." Ds. Ans. ¶ 7. O'Pry pleaded in her answer that she is "entitled to assert the defense of qualified immunity" because "she was engaged in the exercise of discretionary duties" and was "acting within the course and scope of her duties . . ., with objectively reasonable expectation that her conduct . . . was reasonable, lawful and necessary in light of all attendant circumstances." O'Pry Ans. ¶ 8. Additionally, the individual defendants have shown, and the court raises *sua sponte* with respect to O'Pry, that they are governmental officials whose positions involve the exercise of discretion.

liability under § 1983." *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citations and internal quotation marks omitted) (quoting *Johnston v. Harris Cnty. Flood Control Dist.*, 869 F.2d 1565, 1573 (5th Cir. 1989)).

The doctrine of quality immunity protects government officials from suit and liability for civil damages under § 1983 insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *E.g., Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Once qualified immunity is asserted, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam).

First, Byers must show a violation of a constitutional right. *See, e.g., Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson*, 555 U.S. at 236. Second, Byers must establish that the right at issue was clearly established at the time and in the specific context of the alleged misconduct. *See id.* "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Lytle v. Bexar Cnty., Tex.*, 560 F.3d 404, 410 (5th Cir. 2009) (quoting *Saucier*, 533 U.S. at 202). "The defendant's acts are held to be objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution or the federal statute as alleged by the plaintiff." *Thompson v. Upshur Cnty., Tx.*, 245 F.3d 447, 457 (5th Cir. 2001) (emphasis in original) (citing *Anderson v.*

*Creighton*, 483 U.S. 635, 641 (1987)); *see also, e.g., Zarnow v. City of Wichita Falls, Tex.*, 500 F.3d 401, 407-08 (5th Cir. 2007) ("*Zarnow I*") ("If reasonable public officials could differ as to whether the defendants' actions were lawful, the defendants are entitled to immunity.") (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "The 'defendant's circumstances' includes facts know[n] to the defendant." *Thompson*, 245 F.3d at 457. Thus an official who has violated another's constitutional rights may still be eligible for qualified immunity. *Id.* (citing *Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000); *Pierce v. Smith*, 117 F.3d 866, 872 (5th Cir. 1997)).[7]

B

Byers relies in her brief on five instances of alleged excessive force that she maintains occurred between May 21 and 22:

> (1) putting Plaintiff in the restraint chair the first time on May 21, 2008; (2) dislocating her jaw while she was already restrained; (3) leaving her in the restraint chair for a long period of time and after she had already calmed down; (4) putting her back in the restraint chair after she returned from the emergency room and was asleep due to the morphine she had been given for the pain; and (5) leaving her in the restraint chair all night the night of May 21-22, 2008.

---

[7]The court has the discretion to decide, in light of the circumstances of the particular case, which prong should be addressed first. *Pearson*, 555 U.S. at 236 ("[W]hile the sequence set forth there is often appropriate, it should no longer be regarded as mandatory."); *AHF Cmty. Dev., LLC v. City of Dall.*, 633 F.Supp.2d 287, 296 n.7 (N.D. Tex. 2009) (Fitzwater, C.J.) (noting that order of two-step procedure is not mandatory, but deciding, in the court's discretion, to follow the stated order).

P. Br. 21-22.[8]  She bases her excessive force claim on the following facts.  On May 21, at approximately 3:30 p.m., Holloway and Henry were called to Byers' separation cell in response to reports that she was "yelling and kicking on her cell door." P. App. 9, 12.  Byers was banging her head against the wall.  Holloway arrived first.  Byers alleges that Holloway entered her cell "with gas and a mask like he was going to gas [her]," *id.* at 9,[9] which Holloway denies.  After Holloway allegedly "put the gas down" and handcuffed Byers, Henry entered.  *Id.* at 9, 461.  Together, they brought Byers to the "rubber room"—i.e., the violent cell—which is padded.  Byers continued to bang her head against the wall as she was being escorted down the hallway.  She alleges that "[o]n the way to the rubber room [Holloway] allowed me to bang my head on the wall.  He would laugh and say for me to bang my head more." *Id.* at 9.  Holloway denies this.  When they arrived at the rubber room, Holloway observed that a male was present in the neighboring separation cell, so he instead took Byers to another separation cell.[10]  They did not reach that cell, however, because, according to Holloway, Byers kicked her feet from under herself and fell to the floor while

---

[8]Although in the facts section of her brief she refers to other occasions when she was placed in the restraint chair, she explicitly relies only on these five incidents to support her excessive force claim against the individual defendants.  Additionally, in her brief, she combines her analysis of all five.  The court will analyze each individually.

[9]On June 19, 2009 Byers gave a two-page voluntary statement to a detective.  *See* P. App. 9-10.  At the end, she stated: "I have read this statement consisting of 2 pages, each page of which bears my signature, and I do affirm that all facts and statements contained herein are true and correct." *Id.* at 10 (underlining in original).  Many of Byers' allegations are supported by this voluntary statement.

[10]Holloway explained that "a female can't be housed near a male." P. App. 427.  He also stated that he moved Byers because the rubber room was under construction.

they were walking.  Holloway called for a restraint chair, and they escorted Byers down the hall to the chair, which was allegedly near Captain Tommy Nichols' ("Captain Nichols'") office.

According to Byers, Henry, Hightower, and (she "believe[s]") O'Pry were involved in strapping her into the restraint chair.  After she had been fully restrained, Holloway "put a finger or knuckle in the right side of [her] neck" or used a "choke or other type of hold," and she "felt a sharp pain."[11]  P. Br. 10; P. App. 10.  Byers then "started hollering over and over, 'he's hurting me.'"  P. App. 10.  The officers then moved her chair to the recreation yard, where "the left side of [her] face began to swell and [her] lip began [drooping]."  *Id*.

The individual defendants contest several of Byers' assertions.  They first challenge her allegations that Henry, Hightower, and O'Pry were involved in the incident.  Holloway stated in a report submitted the next day, and testified by deposition, that Henry and Sharon Williams ("Williams"), a detention officer, strapped Byers into the restraint chair.  Henry denies being present.  She maintains that her shift ended at 4 p.m. that day and that she was only informed when she returned to work at 8 a.m. the following day that Byers had been left in the restraint chair overnight.  Hightower maintains that she arrived a few minutes before 4 p.m., when she observed Byers already in the restraint chair in the recreation yard.  A strap around Byers' leg had come loose, so Hightower re-secured it.  Hightower recalls observing Holloway standing inside, around three to four feet away from Byers in the restraint chair,

---

[11]Byers does not allege that anyone other than Holloway injured her.

but she does not remember seeing Henry, and she maintains that O'Pry was not present. O'Pry also denies being involved.  She states that her shift began at 4 p.m. that day, and that she only heard from another officer about Byers' being in a restraint chair.

Holloway contests the manner and timing of his actions.  He denies applying pressure to Byers' neck.  He maintains that he held Byers' head, not neck, for "10, 15 seconds" "to keep her from head butting and biting the two females" who were strapping her down.  *Id.* at 434-35.  And he denies holding Byers' head after she was already strapped in.

Later on May 21, Joy Friedman ("Friedman"), a nurse, examined Byers and noticed that her jaw was "out of alignment" but not necessarily dislocated.  When Dr. Grady Shaw ("Dr. Shaw") examined Byers, Byers told him "that Lieutenant Holloway had put his arm around her neck and face and choked her and twisted her neck," and the injury was consistent with these allegations.  *Id.* at 476.[12]  Dr. Shaw transferred Byers to the emergency room at the Navarro Regional Hospital, where she underwent three sets of CT scans for her head, facial, and cervical spine and was given medication.

The radiologists who examined Byers' CT scans disagreed regarding the extent of her injuries.  The first interpreted all three CT scans as negative.  The second concluded that there was "subluxation" (i.e., a "partial dislocation") "of the mandible at the left

---

[12]In a "Physician's Orders" form, Dr. Shaw appears to have noted, among other things: "25%-50% [right] facial paresis"(i.e., "weakness of the muscles") regarding the head, eyes, ears, nose, throat region; "contusion/abrasion just under [right] mastoid" (in other words, a "bruise"/"scrape" just under the "lump of bone right behind your ear") and "neck diffusely tender"; and "[no] facial and nerve trauma."  P. App. 69, 476, and 489.

temporomandibular joint" ("TMJ"). *Id.* at 41, 480-81; *see also id.* at 33 (handwritten "addendum" that appears to state "sublux. [left] mandible [at] TMJ"). Based on the conclusion that "[t]his is a difficult area to image and [a] physical exam is . . . more accurate," Dr. Shaw physically examined Byers' TMJ and found no indication of subluxation, including no tenderness, pain, or clicking. *Id.* at 482, 484. Dr. Shaw appears to have recorded in a "Physician's Orders" form that Byers "has full excursion of [both] TMJ's," meaning that "her mouth opened and closed normally." *Id.* at 73, 483. But because there was disagreement regarding the subluxation issue, he stated "*possible* subluxation of [left] TMJ" and that "I will arrange oral surgery consult if [Byers] remains in [the jail]. I will advise her to see [an] oral surgeon or ENT if she is released." *Id.* at 73 (emphasis added); 483-85. He explained in his deposition, "when you get a finding like this [(i.e., referring to disagreement regarding subluxation issue)], sometimes you need to evaluate it further." *Id.* at 485.

Byers contends that, on her return from the hospital, she was placed back in the restraint chair and woke up the next morning (May 22) still in restraints. Byers was released from the jail on May 23.

C

An excessive force claim by a pretrial detainee held in state custody is governed by the Due Process Clause of the Fourteenth Amendment. *See, e.g., Brothers v. Klevenhagen*, 28 F.3d 452, 455-56 (5th Cir. 1994); *Valencia v. Wiggins*, 981 F.2d 1440, 1449 (5th Cir.

- 10 -

1993).[13] Although convicted prisoners are protected against excessive force under a different constitutional provision (the Eighth Amendment), it is well established that the same standard and protection apply to both pretrial detainees and convicted prisoners when the claim involves excessive force used to restore institutional order. *See Valencia*, 981 F.2d at 1446 (adopting test for Eighth Amendment excessive force claims for pretrial detainee's excessive force claim under Fourteenth Amendment Due Process Clause because "it is impractical to draw a line between convicted prisoners and pretrial detainees [in the context of an excessive force claim] for the purpose of maintaining jail security"); *see also, e.g., Jackson v. Culbertson*, 984 F.2d 699, 700 (5th Cir. 1993) (per curiam) (holding that standard under Eighth Amendment and Due Process Clause is the same).

"The question under this analysis is whether the force applied was in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." *Noel v. Webre*, 426 Fed. Appx. 247, 249-50 (5th Cir. 2011) (per curiam) (citing *Hudson v. McMillian*, 503 U.S. 1, 5-10 (1992); *Valencia*, 981 F.2d at 1446).

---

[13]Although both sides recognize that the Due Process Clause governs this claim, they both erroneously recite the Fourth Amendment excessive force standard as stated in *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001). But the Fourth Amendment does not "provide[] [the] appropriate constitutional basis for protecting against deliberate official uses of force occurring . . . *after* the incidents of arrest are completed, *after* the plaintiff has been released from the arresting officer's custody, and *after* the plaintiff has been in detention awaiting trial for a significant period of time." *Valencia*, 981 F.2d at 1443-44 (emphasis in original); *see also, e.g., Brothers*, 28 F.3d at 456 (citing *Valencia* and applying Fourteenth Amendment standard where pretrial detainee had been arrested, had been released from arresting officer's custody, and had spent several hours in detention at the police department's jail, but had attempted to escape soon after arriving at sallyport area behind county jail).

Although this test is subjective, there is often no evidence of subjective intent, and the trier of fact must consider objective factors in making this determination, such as:

> 1. The extent of the injury suffered;
> 2. The need for the application of force;
> 3. The relationship between the need and the amount of force used;
> 4. The threat reasonably perceived by the responsible officials; and
> 5. Any efforts made to temper the severity of the forceful response.

*Valencia*, 981 F.2d at 1446 & n.29.  "[T]he trier of fact must reflect in this calculus that the detention facility official may have had to act quickly and decisively," *id.* at 1446, and the official is therefore "entitled to wide-ranging deference," *Baldwin v. Stalder*, 137 F.3d 836, 840 (5th Cir. 1998).  It is not necessary for a pretrial detainee to suffer a significant injury, but she must have suffered at least some injury that is more than de minimis.  *Galada v. Payne*, 421 Fed. Appx. 460, 462 (5th Cir. 2011) (per curiam); *see also, e.g., Hudson*, 503 U.S. at 9-10 (refusing to require significant injury in Eighth Amendment excessive force claim because "contemporary standards of decency always are violated" "[w]hen prison officials maliciously and sadistically use force to cause harm . . . whether or not significant injury is evident," but "exclud[ing] from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind'") (citations and internal quotation marks omitted); *Jackson*, 984 F.2d at 700 (holding that pretrial detainee suffered no injury, and that spraying detainee with fire extinguisher was *de minimis* use of force and was not repugnant to the conscience of

mankind).[14]

Under a theory of bystander liability, a prison official who does not personally exert excessive force on a pretrial detainee can still be held liable for failing to protect the pretrial detainee from another's use of excessive force. *See, e.g., Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995) ("[A]n officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force [under the Fourth Amendment] may be liable under section 1983.") (citing cases). Bystander liability applies if the officer "(1) knows that a fellow officer is violating an individual's constitutional rights, (2) has a reasonable opportunity to prevent harm, and (3) chooses not to act." *Nazerzadeh v. Harris Cnty.*, 2010 WL 3817149, at *33 (S.D. Tex. Sept. 27, 2010) (citing *Randall v. Prince George's Cnty., Md.*, 302 F.3d 188, 203-04 (4th Cir. 2002)); *see also Garza v. U.S. Marshals Serv.*, 2008 WL 501292, at *3 (S.D. Tex. Feb. 21, 2008) ("The officer must have had a reasonable opportunity to recognize the occurrence of excessive force and a reasonable opportunity to stop the use of force."). Such liability implicitly requires the presence of the officer at the scene of the constitutional violation. *See, e.g., Hale*, 45 F.3d at 919 (requiring

---

[14]Although courts at one time questioned whether a defendant accused of using excessive force could invoke the defense of qualified immunity—a finding that the defendant had acted with malicious or sadistic intent appeared to be irreconcilable with affording qualified immunity—it is now understood that qualified immunity is available because the defense focuses not on intent but on whether the conduct was *objectively reasonable*. *See Valencia*, 981 F.2d at 1447-48 (holding that defendant accused of excessive force "is not foreclosed from asserting qualified immunity" because immunity "turns on whether his use of force was objectively reasonable," making it "irrelevant whether [defendants] acted with intent to injure [(i.e., malice)] as long as their conduct was objectively reasonable").

officer to be "present at the scene" to be held liable as bystander).  The rationale motivating bystander liability is that "a bystanding officer, by choosing not to intervene, functionally participates in the unconstitutional act of his fellow officer." *Terrell v. Castleberry*, 2008 WL 687519, at *5 (S.D. Tex. Mar. 12, 2008) (citing *Randall*, 302 F.3d at 204 n.24).

IV

The court considers first Byers' excessive force claim against the individual defendants and O'Pry based on her initial, extended, and returned placement in the restraint chair, i.e., all grounds except her alleged jaw injury.[15]

To the extent the individual defendants are moving for summary judgment as to these components based on qualified immunity, they have not done so with sufficient clarity.  This is probably because, as they state in their reply brief, they were unaware that Byers intended to assert such a claim.[16]  Although the court cannot grant summary judgment on a ground not raised, *see, e.g., John Deere Co. v. American National Bank, Stafford*, 809 F.2d 1190, 1192

---

[15]The individual defendants respond separately to the alleged jaw injury (i.e., the second asserted instance) and Byers' initial (i.e., first asserted instance), extended (i.e., third and fifth asserted instances), and returned (i.e., fourth asserted instance) placement in the restraint chair.  The court will also consider them in this manner as well, addressing the alleged jaw injury *infra* at § V.

[16]Although in their reply brief the individual defendants point to the absence of specific elements in Byers' excessive force claim—including that Byers has failed to show that Holloway's actions were unreasonable, and that Hightower and Henry were present and had a reasonable opportunity to realize the excessive nature of the force and intervene—it appears that these arguments are directed to Byers' excessive force claim based on the alleged jaw injury and that they do not specifically address her allegations regarding the restraint chair.

- 14 -

(5th Cir. 1987) (holding that it is error to grant summary judgment on ground not raised), the court can raise summary judgment *sua sponte*, *see, e.g., Jackson*, 2006 WL 680471, at *9 (holding that court is permitted to raise summary judgment *sua sponte*, provided it affords nonmovant notice).

The court raises *sua sponte* that Holloway—or any other defendant whom Byers seeks to hold liable for excessive force (including O'Pry)—is entitled to qualified immunity because Byers has failed to present evidence that would enable a reasonable trier of fact to find that their conduct regarding her initial, extended, and returned placement in the restraint chair violated her constitutional rights, as required under the first prong of qualified immunity.[17]   In particular, Byers has not adduced evidence that she suffered any form of injury, whether or not *de minimis*, due to her placement in the restraint chair.[18]   *See Galada*, 421 Fed. Appx. at 462 (affirming summary judgment where pretrial detainee failed to show some form of injury that was more than *de minimis* and acknowledged that he suffered no

_____

[17]It is unclear whether Byers asserts against all the individual defendants, or only against Holloway, an excessive force claim based on her initial, extended, and returned placement in the restraint chair.  For instance, despite the fact that discovery has been conducted, Byers argues in her brief that "[t]here is a fact question as to who made the decision to put Plaintiff back in the restraint chair after the return from the hospital," P. Br. 31, yet she cites no proof to support the assertion that there is conflicting evidence about who made the decision.

[18]Moreover, Byers' voluntary statement suggests that she did not suffer any other injury.  *See* P. App. 10 (other than alleging that Holloway injured her neck while she was initially being strapped down, omitting any claim that she suffered any injury from being placed in the chair or remaining in the chair, and stating that "[t]he other officers finished strapping me down but did not hurt me").

- 15 -

significant physical injuries).  Moreover, there is no evidence that would enable a reasonable trier of fact to find that the individual defendants or O'Pry acted with a malicious or sadistic purpose in initially placing Byers in the restraint chair, continuing to restrain her in the chair, or returning her to the chair.  *See Noel*, 426 Fed. Appx. at 249-50.  In *Blakeney v. Rusk County Sheriff*, 89 Fed. Appx. 897 (5th Cir. 2004) (per curiam), for example, the Fifth Circuit upheld the determination that jail officials had not violated the Due Process Clause when they placed a pretrial detainee in a restraint chair for 20 hours.  *Id.* at 899.  This was because they had acted not with a punitive purpose but with a legitimate governmental objective, given that the detainee was "unruly and dangerous" and had been "creating havoc" in jail. *Id.*  Given the undisputed summary judgment evidence of Byers' violent and uncontrollable behavior, *Blakeney* supports the use of the restraint chair and the conclusion that such use could not have violated Byers' clearly established rights.[19]  *Blakeney* also calls into question

---

[19]Regarding Byers' initial placement in the restraint chair, there is undisputed evidence, including her own admissions, that she was restrained because she was violent and uncontrollable.  *See* P. App. 9 (according to Byers, she was "banging [her] head on the glass" when Holloway entered her cell, and was banging her head on the wall while walking to the rubber room); 12-13 (Holloway's report, dated May 22, 2008, stated that, while in her cell, "Byers became very combative," "came at Holloway in a threatening manner," and "attempted to kick Holloway between the legs in the groin area"; in the hallway, "Byers began beating the back of her head on the wall," and, while walking, "Byers kicked her feet out from underneath herself and fell to the floor"); 15 (letter from Chief Deputy Mike Cox, dated July 14, 2009, stated "Byers called this office in June 2009, and informed me she suffered permanent nerve damage [due to] a pressure point restraint hold . . . Holloway had used . . . to restrain her from banging her head against the wall of the jail . . . [while] [s]he . . . was physically and mentally out of control") (internal quotation marks omitted); and 433-34 (Holloway testifying by deposition that Byers "was being real violent" when they were trying to strap her in and that he "was trying [to] hold her head to keep her from head butting and biting the two females").

Byers' ability to satisfy the second prong of qualified immunity, which requires that she show that the right at issue was clearly established at the time and in the specific context of the alleged misconduct. The court thus raises *sua sponte* that the individual defendants are entitled to summary judgment concerning Byers' initial, extended, and returned placement in the restraint chair based on the second prong of qualified immunity.

The court also raises *sua sponte* that Hightower, Henry, and O'Pry are entitled to qualified immunity—to the extent Byers' claims against them are based on bystander liability—because Byers has failed to establish a constitutional violation under the first prong. Because Byers has not demonstrated an underlying claim of excessive force, her claims against other jail officials under bystander liability must also fail. *See Nazerzadeh*, 2010 WL 3817149, at *33 ("[B]ecause the record does not raise a fact issue as to the use of excessive force, [plaintiff's] claims that other jailers are liable for failing to intervene fail as well."). Byers' assertion of bystander liability is also subject to dismissal because she has not presented evidence that would enable a reasonable trier of fact to find that each individual defendant was present, knew of a fellow officer's constitutional violation, and had

---

Byers has cited no evidence that would enable a reasonable trier of fact to find that jail personnel had a malicious or sadistic purpose for returning her to the restraint chair, or for her extended stay there, even if it is assumed that she had been sufficiently calmed by medication. Byers' assertion that there is a "fact issue as to whether Plaintiff was calm enough and should have been released from the chair" because "if Plaintiff was calm enough to eat, then she was calm enough to be released," P. Br. 31, is an example of an unsubstantiated, conclusory assertion that is insufficient to create a genuine issue of material fact. *See, e.g., Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998) ("[U]nsubstantiated or conclusory assertions that a fact issue exists will not suffice.") (citing *Anderson*, 477 U.S. at 256).

a reasonable opportunity, yet chose not, to prevent harm as to each step of her initial,

extended, and returned placement in the restraint chair.[20]  *See Hale*, 45 F.3d at 919; *Nazerzadeh*,

---

[20]Regarding Byers' initial placement in the restraint chair, Byers' voluntary statement is the only evidence that identifies Hightower and O'Pry as having been present. Considering the self-serving nature of this component of her voluntary statement and the plentiful evidence that neither Hightower nor O'Pry was present, Byers cannot defeat summary judgment on this basis—the evidence is insufficient to create a genuine fact issue that Hightower and O'Pry were present. *Cf. Smith v. Sw. Bell Tel. Co.*, 2012 WL 28256, at *3 (5th Cir. Jan. 5, 2012) (per curiam) ("[W]e have repeatedly held that self-serving statements, without more, will not defeat a motion for summary judgment, particularly one supported by plentiful contrary evidence.") (citing cases); *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994) (per curiam) (holding that, even if rational trier of fact could conclude that plaintiff had presented "scintilla of evidence," "a mere scintilla is not enough to defeat a motion for summary judgment"). Byers' identification *of Henry*, however, is sufficient because it is supported by other evidence, including Holloway's deposition testimony. *See C.R. Pittman Constr. Co. v. Nat'l Fire Ins. Co.*, 2011 WL 5031414, at *4 (5th Cir. Oct. 24, 2011) (per curiam) ("Although arguably 'self-serving,' the affidavits are not wholly conclusory, are based on personal knowledge, and create a fact issue as to the cause[.]"). But even if a reasonable trier of fact could find that Henry was present, it could not find that Henry knew that a constitutional violation would result from Byers' initial placement in the restraint chair and that Henry had a reasonable opportunity to intervene, yet did not, given that it is undisputed that Henry's shift ended shortly thereafter.

Byers' allegations regarding her returned placement in the restraint chair also are insufficient. Similar to how Byers is unable to identify the individual defendant who ordered her returned placement, *see supra* note 17, she has also failed to identify the defendants who were present, knew of the constitutional violation, and had a reasonable opportunity to intervene, yet did not, in her returned placement. Her conclusory and unsupported allegation that "Hightower, being with Plaintiff at the hospital and presumably one of the ones who returned her to the jail, could have intervened to stop that decision to put her back in the chair," P. Br. 31-32, is insufficient to create a genuine fact issue to support bystander liability against Hightower. *See, e.g., Larry v. White*, 929 F.2d 206, 211 n.12 (5th Cir. 1991) ("Unsworn pleadings, memoranda, or the like are not, of course, competent summary judgment evidence."). Assuming that Byers makes the same argument as to O'Pry (who was also allegedly at the hospital with Hightower and Byers), this argument similarly fails. And Henry does not appear to have been present for this decision, given that it is undisputed that Henry arrived at work at 8 a.m. the following day, which appears to be after a decision would have been made to return Byers to the restraint chair.

Finally, Byers has failed to point to evidence that would enable a reasonable trier of

- 18 -

2010 WL 3817149, at *33.  And because Byers is also required to show under the second prong of qualified immunity that the right was clearly established at the time and in the specific context of the alleged misconduct, the court also raises summary judgment *sua sponte* as to this prong.

If Byers desires to oppose summary judgment on a basis that the court has raised *sua sponte*, she must file a supplemental brief and supporting appendix within 30 days of the date this memorandum opinion and order is filed.  If she does not, the court will grant summary judgment in favor of the individual defendants and O'Pry dismissing Byers' excessive force claim based on her initial, extended, and returned placement in the restraint chair.  If she does respond, the court will decide whether to request a reply brief from the individual defendants and O'Pry.[21]

---

fact to find that the individual defendants and O'Pry were present, knew of the constitutional violation, and had a reasonable opportunity to intervene with respect to her extended placement in the restraint chair.  Byers' statement that "[t]here is no indication that anyone, including Henry, intervened to stop this excessive use of force" (i.e., Byers' extended placement in the restraint chair), *see* P. Br. 33, fails to create a genuine fact issue.  *See Larry*, 929 F.2d at 211 n.12.

[21]In their reply, the individual defendants contend that the court should not consider this claim because Byers failed to plead it.  Because the court is raising *sua sponte* that the individual defendants and O'Pry are entitled to summary judgment on this claim, the court denies this request.

- 19 -

V

The court now turns to Byers' excessive force claim against the individual defendants and O'Pry based on her alleged jaw injury.[22]

A

The court considers first the claim against Holloway. Viewing the facts in the light most favorable to Byers, the court assumes that Holloway "put a choke or other type of hold" on Byers by applying "tremendous pressure to the back of [her] jaw," P. Br. 10, resulting in the subluxation of her left TMJ.[23] But it is also undisputed that Byers was acting in a violent manner before and during the time when Holloway and the other jail employees were attempting to strap her in the restraint chair.[24] And Byers does not contest Holloway's

---

[22]Although the individual defendants point only to the absence of certain, but not all, elements necessary to defeat their qualified immunity defense, once the defense was adequately raised (which it was in this case), the burden of producing evidence to defeat all the elements was placed on Byers. *See Vasquez v. Chacon*, 2009 WL 2169017, at *5 (N.D. Tex. July 20, 2009) (Lynn, J.) ("To satisfy that burden on a motion for summary judgment, the plaintiff must produce evidence showing that [defendants] violated the plaintiff's constitutional rights and that the violation was objectively unreasonable.") (citing *Zarnow I*, 500 F.3d at 407; *Nunez v. Simms*, 341 F.3d 385, 388 (5th Cir. 2003)).

[23]Although defendants dispute some of these allegations, the court holds that, when the facts are considered in the light most favorable to Byers, these allegations have an evidentiary basis. *See* P. App. 476 (Dr. Shaw testified that Byers told him that Holloway choked and twisted her neck, and that the injury was consistent with this allegation); 480-85 (Dr. Shaw stated that one radiologist said there was subluxation at the left TMJ, although this was disputed by another radiologist and his physical examination); and 528 (Friedman acknowledged that, when she examined Byers the day of the incident, Byers "said words to [the] effect" that "Holloway had put her in a chokehold and put pressure on her jaw").

[24]This proposition is supported by Byers' admissions and by descriptions of the incident provided by others. *See* P. App. 9 (Byers averred in her voluntary statement that "[she] was banging [her] head on the glass"); 12-13 (Holloway's report, dated May 22, 2008,

- 20 -

testimony that he held her for "10, 15 seconds" "to keep her from head butting and biting the two females."  P. App. 434-35.

Although Byers alleges that she was already strapped in when Holloway exerted force against her, the evidence on which she relies—her voluntary statement and Holloway's deposition—does not support such a reading.  Instead, Byers' voluntary statement suggests that the alleged injury occurred while the jail employees were strapping her into the restraint chair.  According to Byers:

> They put me in the chair and I was sitting there.  They were holding my arms and legs down and Holloway put a finger or knuckle in the right side of my neck and I felt a sharp pain.  I started hollering over and over, "he's hurting me."  The other officers finished strapping me down but did not hurt me.

*Id.* at 10.  And Byers mischaracterizes the deposition transcript when she contends that Holloway admitted holding her after she was already strapped in; in fact, he repeatedly denied this.  *See id.* at 434-35 (Holloway testified: "I had [a hold] of her before we had her

---

stated that "Byers became very combative," "came at Holloway in a threatening manner," and "attempted to kick Holloway between the legs in the groin area" in her cell, "Byers began beating the back of her head on the wall" in the hallway, and "Byers kicked her feet out from underneath herself and fell to the floor" while walking); 15 (letter from Cox, dated July 14, 2009, in which he stated that "Byers called this office in June 2009, and informed me she suffered permanent nerve damage [due to] a pressure point restraint hold . . . Holloway had used . . . to restrain her from banging her head against the wall of the jail . . . [while] [s]he . . . was physically and mentally out of control"); and 433-34 (Holloway testified by deposition that Byers "was being real violent" when they were trying to strap her in and that he "was trying [to] hold her head to keep her from head butting and biting the two females").

strapped in," and he twice denied that he went behind Byers while she was strapped in).[25] The court therefore declines to rely on this unsupported allegation, and it concludes that her arguments that rest on this premise lack merit.

The court turns initially to the second prong of qualified immunity. *See Pearson*, 555 U.S. at 236 ("[W]hile the sequence set forth there is often appropriate, it should no longer be regarded as mandatory."). Even assuming *arguendo* that a reasonable trier of fact could find under the first prong of qualified immunity that Holloway used excessive force in causing Byers' jaw injury, she has failed to present sufficient evidence to create a genuine fact issue regarding the second prong: that this right was clearly established at the time *and in the specific context of the alleged misconduct*. The proper focus is not on whether the right was "clearly established in a general sense" but whether "the right to be free from the degree of force employed in a *particular situation* may not have been clear to a reasonable officer at the scene." *See Lytle*, 560 F.3d at 417 (emphasis added) (quoting *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008)). Byers begins her argument by contending that

---

[25]Byers relies on the following exchange between her counsel and Holloway during his deposition to argue that Holloway admitted holding her down after she was strapped in:

> Q.   Why did you go around then behind Jennifer Byers and apply a pressure hold, or some type of restraint to her at that time, when she was restrained in the chair?
> A.   I was trying [to] hold her head to keep her from head butting and biting the two females.

P. App. 434.  Holloway's answer addressed why he was holding Byers down; he did not admit holding her while she was already strapped in.  Soon after, Holloway clarified this point by repeatedly stating that he was holding her before she was fully strapped in.

"Defendants violated a constitutional right of Plaintiff's, which was clearly established at the time, and . . . Defendants' conduct was objectively unreasonable because a reasonable official would understand that his conduct violates that constitutional right." P. Br. 24. Byers cannot meet her summary judgment burden by relying solely on such unsubstantiated and conclusory statements in her brief. *See, e.g., Larry v. White*, 929 F.2d 206, 211 n.12 (5th Cir. 1991) ("Unsworn pleadings, memoranda, or the like are not, of course, competent summary judgment evidence."). Regarding Holloway specifically, Byers maintains that reasonable officials in his position would have understood that they were violating a constitutional right because "if someone was already restrained, it would be excessive force to use pressure points or a chokehold on Plaintiff." P. Br. 28. But as the court has already explained, there is no evidence from which a reasonable jury could find that Holloway injured Byers' jaw *while she was already restrained*.

Moreover, given the timing and context of the alleged misconduct, the evidence that Byers offers is insufficient for a reasonable trier of fact to find that Holloway acted in an objectively unreasonable manner. Because a "detention facility official may have had to act quickly and decisively," he is "entitled to wide-ranging deference." *Valencia*, 981 F.2d at 1446; *Baldwin*, 137 F.3d at 840. "The defendant's acts are held to be objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution or the federal statute as alleged by the plaintiff." *Thompson*, 245 F.3d at 457 (emphasis in original) (citing cases). Holloway's role was to restrain Byers as two female jail officials attempted to strap her in

a restraint chair.  Although Byers contends that "[t]here is no evidence that [Holloway] perceived a threat from [Byers]," P. App. 27, there is undisputed proof of Byers' violent and combative nature, including uncontradicted evidence that Byers was attempting to head-butt and bite the other jail officials.  In these circumstances, a reasonable jail official could have concluded that holding the detainee for 10 to 15 seconds, and using the force alleged here, was necessary to place the detainee in a restraint chair and to prevent her from injuring the jail officials who were attempting to place her in the chair.[26]  *See, e.g., Noel*, 426 Fed. Appx. at 249-50 (affirming dismissal of pretrial detainee's excessive force claim where there was evidence that officer had restrained pretrial detainee to protect other officers and prevent

---

[26]It is clear that Byers' injury—the subluxation of her TMJ—is more than *de minimis*. *Cf. Hudson*, 503 U.S. at 10 (holding that "blows . . . which caused bruises, swelling, loosened teeth, and a cracked dental plate, are not *de minimis* for Eighth Amendment purposes").  But Margo Frasier ("Frasier"), defendants' expert witness, explained that pressure points are used to "get the inmates [to] focus on a little bit of pain so that you have the time to be able to get the person restrained.  And also to get them to comply with the instructions that they're being given."  P. App. 568.  "It's not to cause some sort of permanent injury."  *Id.* at 569.  But even if permanent injury were to result, it does not necessarily indicate that force was applied in an objectively unreasonable manner.  The extent of injury is but one factor to demonstrate the subjective standard of malicious or sadistic purpose.  *Cf. Hudson*, 503 U.S. at 7 (in holding that injury need not be significant to make Eighth Amendment excessive force claim, noting that "the extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation, 'or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur'") (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)); *Brothers*, 28 F.3d at 457 (holding that officers' use of deadly force to prevent escape of pretrial detainee was good faith effort to maintain and restore discipline because, among other things, officers had shouted for detainee to stop, detainee ignored warnings and continued escape, and officers had to act quickly and decisively, following the official policy of sheriff's department that permitted deadly force to prevent escape from jail).

detainee from biting her).

Accordingly, because Byers has failed to establish the second prong of qualified immunity and this failure is alone sufficient to entitle Holloway to summary judgment, *see McClendon*, 305 F.3d at 323 ("Ultimately, a state actor is entitled to qualified immunity if his or her conduct was objectively reasonable in light of the legal rules that were clearly established at the time of his or her actions."), the court grants summary judgment in favor of Holloway, dismissing Byers' excessive force claim based on her alleged jaw injury.

## B

The court now turns to Byers' claim against Hightower.

Even viewing the evidence in the light most favorable to Byers, the court holds that she has failed to satisfy the first element necessary to defeat qualified immunity. This is so because the evidence would not enable a reasonable trier of fact to find that Hightower violated Byers' constitutional rights by failing to intervene in Holloway's alleged use of excessive force. For there to be bystander liability, the defendant must have been present when the excessive force was used. *Cf. Hale*, 45 F.3d at 919. The only evidence that Byers offers to prove that Hightower was present is her self-serving voluntary statement. The balance of the summary judgment record, however, supports a contrary finding that Hightower had not yet arrived at work and did not assist Holloway. *See* P. App. 12-13 (Holloway, in a report dated "5-22-08," identified Williams and Henry as the officers assisting in securing Byers in the restraint chair); 326-27 (Hightower testified by deposition that when she arrived a few minutes before 4 p.m., Byers was already strapped in the restraint

- 25 -

chair and placed in the recreation yard); and 432 (Holloway testified by deposition that Williams and Henry assisted, and stated that he did not recall Hightower's being there). As a result, such a self-serving statement outweighed by the plentiful contrary evidence cannot defeat a motion for summary judgment. *Cf. Smith v. Sw. Bell Tel. Co.*, 2012 WL 28256, at *3 (5th Cir. Jan. 5, 2012) (per curiam) ("[W]e have repeatedly held that self-serving statements, without more, will not defeat a motion for summary judgment, particularly one supported by plentiful contrary evidence.") (citing cases); *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994) (per curiam) (holding that, even if rational trier of fact could conclude that plaintiff had presented "scintilla of evidence," "a mere scintilla is not enough to defeat a motion for summary judgment"); *Morris v. Pierce*, 2008 WL 4287967, at *7 (W.D. La. Sept. 17, 2008) (granting summary judgment for one officer because "[n]o other evidence places [this officer] in physical contact with Plaintiff at any time"). Moreover, Byers has failed to point to evidence that would enable a reasonable trier of fact to find that Hightower knew of the alleged constitutional violation and had a reasonable opportunity to prevent it, yet did not. *See Nazerzadeh*, 2010 WL 3817149, at *33. Although Byers offers the conclusory assertion that "there is [an] issue of whether she had a reasonable opportunity to realize the excessive nature of the force (Holloway harming Plaintiff's jaw) and time to intervene and stop it," P. Br. 30, she does not identify the evidence that supports her "unsubstantiated or conclusory assertion[] that a fact issue exists," *see, e.g., Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998) (citing *Anderson*, 477 U.S. at 256). The undisputed evidence is that Holloway held Byers down for only "10, 15 seconds."

P. App. 435.  Many cases hold as a matter of law that this length of time does not afford an

officer a reasonable opportunity to intervene.[27]  The short length of time also makes it

unlikely that Hightower would have known whether Holloway had committed a

constitutional violation.

Additionally, Byers bears the burden of proving that the right against excessive force

was clearly established at the time and in the specific context of the alleged misconduct.  But

she does not address this element as to Hightower specifically, and to the situation Hightower

faced.  *Cf. Deshotels v. Marshall*, 2011 WL 5456108, at *5 (5th Cir. Nov. 10, 2011) (per

curiam) (holding that officer's actions were objectively reasonable because *Hale*, 45 F.3d

914, did not provide "'fair notice' that officers actively engaged in restraining a large,

potentially dangerous suspect [were] required to intervene and prevent another officer's use

of excessive force," since the facts in *Hale* were significantly different because the case

involved an officer standing by and laughing as another officer beat plaintiff).  Her general,

---

[27]*See Nazerzadeh*, 2010 WL 3817149, at *33 (holding that, even assuming that defendants witnessed use of force, "there is no basis to conclude that those jailers had a reasonable opportunity to assess the situation and intervene," given that "alleged use of excessive force lasted less than one minute"); *cf. Vasquez*, 2009 WL 2169017, at *7 ("[T]he short duration of alleged excessive force did not provide [defendant] with a reasonable opportunity to intervene."); *Morris*, 2008 WL 4287967, at *7 (holding that defendant did not have reasonable opportunity to prevent application of force by other officers because "the other officers' struggle with Plaintiff was over within 10-15 seconds, 'if that long,' after [defendant] arrived"); *Gilbert v. French*, 2008 WL 394222, at *8 (S.D. Tex. Feb.12, 2008) (holding that defendants did not have time to prevent shots from being fired, given that police reports established, and plaintiff did not contradict, that "mere seconds elapsed" from time plaintiff exited and was shot, which as a matter of law was "an insufficient amount of time for officers to appreciate and react to a possible use of excessive force, especially in light of the dangerous and quickly evolving situation"), *aff'd*, 364 Fed. Appx. 76 (5th Cir. 2010).

conclusory assertion that "Defendants' conduct was objectively unreasonable," P. Br. 24, is insufficient to meet her burden. *See, e.g., Morris*, 144 F.3d at 380.

Accordingly, the court holds that Hightower is entitled to qualified immunity as to Byers' bystander liability claim based on her alleged jaw injury.

## C

The court considers third Byers' claim against Henry.

Even viewing the evidence in the light most favorable to Byers, the summary judgment proof would not enable a reasonable trier of fact to find that Henry failed to intervene in Holloway's alleged use of excessive force, as required to defeat qualified immunity. Assuming *arguendo* that Holloway used excessive force, Byers has still failed to adduce evidence that would enable a reasonable trier of fact to find that Henry knew of the constitutional violation and had a reasonable opportunity to intervene, yet did not, *see Nazerzadeh*, 2010 WL 3817149, at *33, especially since it is undisputed that Holloway's use of force lasted "10, 15 seconds,"[28] *see supra* note 27. Byers has also failed to meet the second requirement for defeating qualified immunity by establishing that the right against excessive force was clearly established in the specific context of the alleged misconduct. She offers no argument specific to Henry, and her general, conclusory assertion that "Defendants' conduct was objectively unreasonable," P. Br. 24, is insufficient to meet her burden. *See,*

---

[28]Although Henry maintains that she was not present, Byers cites evidence that Henry was. *See* P. App. 12-13 (Holloway's report, dated "5-22-08," stated that Henry was one of the two individuals who secured Byers in the restraint chair); and 432 (Holloway testified by deposition that he believed Henry was one of the persons who strapped in Byers).

*e.g., Morris*, 144 F.3d at 380.

## D

The court considers fourth Byers' claim against O'Pry. Although O'Pry did not join in this summary judgment motion, the court raises *sua sponte* that O'Pry is entitled to qualified immunity as to Byers' bystander liability claim based on the alleged jaw injury. Even assuming *arguendo* that Holloway used excessive force, the evidence does not support a reasonable finding that O'Pry was present,[29] *cf. Hale*, 45 F.3d at 919, knew of a constitutional violation, *see Nazerzadeh*, 2010 WL 3817149, at *33, and had a reasonable opportunity to intervene, yet did not, *see id.*, given the brief period of time the force lasted, *see id.* To defeat qualified immunity, Byers must also establish that the right against excessive force was clearly established at the time and in the specific context of the alleged misconduct, and the court raises summary judgment *sua sponte* as to this issue.

The court therefore raises *sua sponte* that O'Pry is entitled to qualified immunity as to Byers' bystander liability claim based on the alleged jaw injury. If Byers desires to oppose summary judgment on this basis, she must file a supplemental brief and supporting appendix

---

[29]In Byers' self-serving voluntary statement, she avers that she "believe[s]" O'Pry was present. P. App. 10. Considered against plentiful contrary evidence—*see* P. App. 12-13 (Holloway, in a report dated "5-22-08," identified Williams and Henry as the officers assisting in securing Byers in the restraint chair); 386-87 (O'Pry testified by deposition that she only heard about Byers' being in a restraint chair when she arrived at 4 p.m. that day); and 432 (Holloway testified by deposition that Williams and Henry assisted—this self-serving statement is alone insufficient to defeat summary judgment. *See Smith*, 2012 WL 28256, at *3; *Davis*, 14 F.3d at 1086.

within 30 days of the date this memorandum opinion and order is filed.[30]  If she does not, the court will grant summary judgment in favor of O'Pry dismissing Byers' excessive force claim based on her alleged jaw injury.  If she does respond, the court will decide whether to request a reply brief from O'Pry.

VI

The court now turns to Byers' excessive force claim against Navarro County.

A municipality is a "person" subject to suit under § 1983 under certain circumstances. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 (1978).  Although a municipality cannot be held liable simply on a theory of *respondeat superior, id.* at 691, it can be held liable if a deprivation of a constitutional right was inflicted pursuant to an official policy or custom, *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001). Municipal liability requires proof of three elements: "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom."  *Valle v. City of Hous.*, 613 F.3d 536, 541-42 (5th Cir. 2010) (quoting *Pineda v. City of Hous.*, 291 F.3d 325, 328 (5th Cir. 2002)) (internal quotation marks omitted).

The first element requires proof of an official policy or custom.  "[A] policy can be shown through evidence of an actual policy, regulation, or decision that is officially adopted

---

[30]These pleadings are not in addition to other pleadings permitted by this memorandum opinion and order.  They must be part of the same pleadings and are subject to total page limitations that apply to a single brief.

and promulgated by lawmakers or others with policymaking authority." *Id.* at 542 (citing *Burge v. St. Tammany Parish*, 336 F.3d 363, 369 (5th Cir. 2003)).  Although a "single decision by a policy maker may, under certain circumstances, constitute a policy for which a municipality may be liable[,] . . . this 'single incident exception' is extremely narrow and gives rise to municipal liability only if the municipal actor is a final policymaker." *Id.* (citations, brackets, and internal quotation marks omitted).  A custom is "a persistent, widespread practice of City officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Piotrowski*, 237 F.3d at 579 (quoting *Webster v. City of Hous.*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc) (per curiam)).

To satisfy the second element, the plaintiff must demonstrate that "actual or constructive knowledge of a custom [is] attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority." *Valle*, 613 F.3d at 542 (quoting *Webster*, 735 F.2d at 842) (brackets omitted); *Piotrowski*, 237 F.3d at 579 (same citation and changes).  Liability attaches only when a final policymaker (as distinguished from a final decisionmaker), who has "the responsibility for making law or setting policy in any given area of a local government's business," establishes the municipal policy with respect to the action ordered. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 125 (1988); *see also Jett v. Dall. Indep. Sch. Dist.*, 7 F.3d 1241, 1247 (5th Cir. 1993) (explaining distinction between final policymaking authority and mere decisionmaking); *Bolton v. City of Dall., Tex.*, 541 F.3d 545, 548-49 (5th Cir. 2008) (per

curiam) ("Our analysis must also take into account the difference between final decisionmaking authority and final policymaking authority, a distinction that this circuit recognized as fundamental . . . . [D]iscretion to exercise a particular function does not necessarily entail final policymaking authority over that function.") (citations omitted).

The third element requires that the plaintiff establish that the municipal policy or custom was the "moving force" of the constitutional deprivation, which requires a "high threshold of proof." *Piotrowski*, 237 F.3d at 580 (citing *Monell*, 436 U.S. at 694). The "plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Valle*, 613 F.3d at 542 (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)) (internal quotation marks omitted). Byers therefore "must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Id.* (quoting *Bd. of Cnty. Comm'rs*, 520 U.S. at 411) (internal quotation marks omitted); *see also Piotrowski*, 237 F.3d at 579 ("[E]ven a facially innocuous policy will support liability if it was promulgated with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result.") (quoting *Bd. of Cnty. Comm'rs*, 520 U.S. at 407). Simple or even heightened negligence, however, is insufficient to meet the deliberate indifference requirement. *Valle*, 613 F.3d at 542 (quoting *Bd. of Cnty. Comm'rs*, 520 U.S. at 407).

VII

Byers contends that Navarro County can be held liable under § 1983 for failing to adopt a policy specific to the proper use of restraint chairs.[31]

A

A municipality can be held liable for the failure of its policymaker to adopt a precaution, provided the omission "amount[s] to an intentional choice, not merely an unintentionally negligent oversight." *Rhyne v. Henderson Cnty.*, 973 F.2d 386, 392 (5th Cir. 1992) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 387 (1989), *abrogated on other grounds by Farmer v. Brennan*, 511 U.S. 825 (1994)). For the decision to be "intentional," it must be "deliberately indifferent." *Id.* (citing *City of Canton*, 489 U.S. at 390). "A failure to adopt a policy can be deliberately indifferent when it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights." *Id.* (citing *City of Canton*, 489 U.S. at 390).

B

Byers supports this claim by referring to her initial, extended, and returned placement in the restraint chair in the events surrounding her alleged jaw injury on May 21. She complains that she was restrained even though she had calmed down.[32] Byers also asserts

---

[31]Byers appears to advance several theories of municipal liability. The court will address them in the order in which she presents them.

[32]The facts regarding these incidents are discussed *supra* at § III(B). Byers suggests that these incidents are part of her excessive force claim, arguing that there were "five different [Constitutional violations] deriving from excessive force." P. Br. 34. These appear

that, according to the jail logs, she was placed in the restraint chair "all day and all night on four occasions." P. Br. 36. The jail logs document the following instances: (1) at 4:36 p.m. on May 21, "Byers currently on ESM rec yard per Lt. Do not move her out of chair per Lt.," P. App. 195; (2) at 11:45 p.m. on what appears to be May 21,[33] "[O'Pry] said Byers is not to be taken out of the chair or the restraints all night per orders from . . . Lt. Holloway," *id.* at 194; (3) sometime from 3:30 to 4:00 p.m. on an unknown date, "No rec ran today because [Byers] was strapped in chair all day on rec yard," *id.* at 197; and (4) at 4:25 p.m. on the same unknown date, "Lt. Holloway . . . says Byers will be kept in chair in MPR tonight," *id.* Because the first and second documented instances refer to her restraint on May 21—the same day and time of her restraint after the alleged jaw injury—this appears to provide evidence of only two additional instances when she was placed in the restraint chair for extended periods.

Navarro County responds that it has adequate policies and procedures against excessive force, as shown by the Navarro County Sheriff's Office General Manual ("Manual"), which contains policies regarding "Use of Force and Deadly Force" and "Use of Restraints." It is undisputed that Navarro County issues a copy of the Manual to each

---

to refer to the five discussed above, four of which refer to her initial, extended, and returned placement in the restraint chair.

[33]This is based on the court's reading of the jail logs that Byers has submitted. It is difficult to read the jail logs because they are handwritten and then photocopied. Furthermore, the logs do not indicate clearly, if at all, the dates of the reports, and, as submitted, the sheets do not appear to be in chronological order. But even if the court has misinterpreted the logs, the precise dates are immaterial in the context discussed here.

officer and that each officer is required when hired to read and sign a statement indicating that he has read and understands the Manual.  The "Use of Force and Deadly Force" policy provides, in part, that "[i]t is the Deput[y's] responsibility to apply only the minimum amount of force necessary at any stage of a conflict to prevent unnecessary injury to the suspect and Deputies" but reserves for Deputies the ability to "immediately apply[] a more severe application of force, if necessary, without first exhausting the lesser methods [listed on a force continuum]." *Id.* at 209.  "If circumstances permit, personnel endeavor to minimize the pain and injury that may result from the type or degree of physical force used." *Id.*  Although the "Use of Restraints" policy directs officers to "use restraints on prisoners to ensure the safety of all persons, to protect property, and to maintain security of the prisoner," and "in a manner which minimizes the possibility of unusual discomfort, injury, or adverse public opinion," the next subsection clarifies that, by restraints, the policy is referring to "handcuffs, or other approved restraints as necessary."[34]  *Id.* at 206.  Byers criticizes these policies for not referring specifically to the use of restraint chairs.

---

[34]The Manual provides, in part, regarding the use of restraints:

> Deputies and Detention Officers use restraints on prisoners to ensure the safety of all persons, to protect property, and to maintain security of the prisoner.  It is the policy of the Sheriff that handcuffs be used, when practical.  All restraints are to be used in a manner which minimizes the possibility of unusual discomfort, injury, or adverse public opinion.

P. App. 206.

C

To establish that Navarro County is liable on this basis, Byers must at least "show an underlying constitutional violation resulting from an official policy." *See Sanchez v. Edwards*, 433 Fed. Appx. 272, 276-77 (5th Cir. 2011) (per curiam) (citing *Monell*, 436 U.S. at 694) (stating this rule for municipal liability claims in general; holding that because plaintiffs failed to show underlying violation, municipal liability claims failed as well); *see also, e.g., Bustos v. Martini Club Inc.*, 599 F.3d 458, 467 (5th Cir. 2010) (noting that Supreme Court provided that no municipal liability exists "[i]f a person has suffered no constitutional injury at the hands of the individual police officer," and even though some courts have cautioned that municipality may be liable if alleged injuries were not solely attributable to named individual defendants, defendants were solely involved in the plaintiff's injuries) (quoting *City of L.A. v. Heller*, 475 U.S. 796, 799 (1986) (per curiam); *Curley v. Vill. of Suffern*, 268 F.3d 65, 71 (2d Cir. 2001)).  Thus the viability of Byers' excessive force claim against Navarro County depends on whether she can establish that a jail official used excessive force against her via the restraint chair.  But the court has already raised *sua sponte* that the individual defendants and O'Pry are entitled to summary judgment dismissing Byers' excessive force claim based on her initial, extended, and returned placement in the restraint chair in the circumstances surrounding her alleged jaw injury.  *See supra* § IV.  This is so because Byers lacks evidence regarding injury, *see Galada*, 421 Fed. Appx. at 462,  and a malicious and sadistic purpose, *see Noel*, 426 Fed. Appx. at 249-50, which are required elements to prove an underlying excessive force claim.  And although Byers' claim against

- 36 -

Navarro County may be founded on the other two instances when Byers was placed in the restraint chair for extended periods, it appears that they too do not rise to excessive force for the same reasons.

Even if Byers in her supplemental briefing produces evidence that would enable a reasonable trier of fact to find that either her initial, extended, or returned placement in the restraint chair establishes excessive force, her claim against Navarro County must still fail because she has adduced no evidence that Navarro County acted with deliberate indifference in failing to adopt a restraint policy.  In response to the existing general policies in the Manual, Byers merely argues that these policies were not specific enough because they did not identify restraint chairs.  There is no evidence from which a reasonable trier of fact could find that Navarro County's reliance on general policies was a result of an intentional refusal—as opposed to an "unintentionally negligent oversight"—or that "it [was] obvious that the likely consequences of not adopting a policy [would] be a deprivation of constitutional rights."  *See Rhyne*, 973 F.3d at 392 (citing cases); *see also, e.g., Doe v. Dall. Indep. Sch. Dist.*, 153 F.3d 211, 217 (5th Cir. 1998) (rejecting claim because plaintiff failed to point to evidence to suggest that lack of policy was intentional choice).  Byers has therefore failed to demonstrate the deliberate indifference requirement.

Accordingly, the court holds that Navarro County is entitled to summary judgment dismissing the component of Byers' claim that is based on Navarro County's failure to adopt a restraint chair policy.

VIII

Byers also seeks to hold Navarro County liable under § 1983 based on an alleged custom of using the restraint chair in an excessive manner.[35]  The court concludes that Navarro County is entitled to summary judgment dismissing this basis for municipal liability.

First, Byers has referred to a few incidences (four at most) where the restraint chair was allegedly used for extended periods.[36]  But, as a matter of law, these few examples are not sufficiently "persistent" and "widespread" to fairly represent a "custom" of Navarro County.  *See, e.g., Piotrowski*, 237 F.3d at 579.

Second, assuming *arguendo* that Byers has established a custom, the summary judgment record still lacks evidence that would enable a reasonable trier of fact to find that a governing body or policymaker of Navarro County had actual or constructive knowledge of it, and Byers does not even attempt to argue this element.  *See Valle*, 613 F.3d at 542.

---

[35]Byers criticizes Navarro County for *not* having a policy regarding the use of a restraint chair, and she then asserts that Navarro County has a custom of using the restraint chair in a manner that constitutes excessive force.  Byers does not argue that the policies in the Manual are themselves unconstitutional or that they were the "moving force" behind the alleged constitutional deprivation.  Even if Byers bases this claim on policies in the Manual, however, she has not adduced evidence that would enable a reasonable trier of fact to find that, in adopting the policies, Navarro County acted with deliberate indifference to the risk of excessive force.  *See, e.g., Valle*, 613 F.3d at 542.  Instead, a reasonable trier of fact could only find that the policies in the Manual attempt to protect against excessive force in the use of the restraint chair.  The Manual specifically directs officers to use restraints "in a manner which minimizes the possibility of unusual discomfort, injury, or adverse public opinion." P. App. 206.  Regarding the use of force, the Manual states that officers are "to apply only the minimum amount of force necessary at any stage of a conflict" unless "a more severe application of force" is necessary.  *Id.* at 209.

[36]The facts regarding these incidents are discussed above.  *See supra* § VII(B).

Third, a reasonable trier of fact could not find that the alleged "custom" of using excessive force resulted in, or was the moving force of, a constitutional violation. *See Piotrowski*, 237 F.3d at 580. Byers has not demonstrated that the decision of a Navarro County final policymaker reflects deliberate indifference to an obvious risk of a constitutional violation. *See Valle*, 613 F.3d at 542. And the court has already raised summary judgment *sua sponte* as to the underlying excessive force claim based on Byers' initial, extended, and returned placement in the restraint chair on the basis that the record lacks evidence of injury, *see Galada*, 421 Fed. Appx. at 462, and of a malicious or sadistic purpose, *see Noel*, 426 Fed. Appx. at 249-50, and the remaining instances when Byers was placed in the restraint chair for extended periods appear to suffer from the same defects. *See supra* § IV. Without an underlying constitutional violation, Byers cannot recover against Navarro County on a municipal liability claim, *see Sanchez*, 433 Fed. Appx. at 276, or argue that the "custom" was a moving force in causing it, *see Piotrowski*, 237 F.3d at 580. The court therefore holds that Navarro County is entitled to summary judgment dismissing Byers' attempt to hold it liable on the basis of a custom of using the restraint chair in an excessive manner.

IX

Based on Holloway's actions, Byers alleges that Navarro County had a policy or custom of utilizing excessive force.[37] The evidentiary support for this claim appears to come

---

[37]The facts regarding the alleged jaw injury are discussed above. *See supra* § III(B). The court examines this argument because Byers appears to raise it by stating that "there are

from Holloway's alleged use of excessive force in inflicting the jaw injury and from an

allegation that there is a "custom of excessive force with regard to the pepper ball gun." P.

Br. 35 n.19. The latter, found in a footnote in Byers' brief, appears to refer to an incident in

which it was determined that Holloway had violated the Manual's policy on use of force by

shooting two inmates with a pepper ball gun, and for which he was terminated in June 2009.

The court holds that Navarro County is entitled to summary judgment regarding this

basis for municipal liability. Navarro County clearly requested summary judgment on this

issue, pointing to the absence of supporting evidence. In response, Byers has failed to cite

evidence that would enable a reasonable trier of fact to find in her favor. Instead, she focuses

on the claims against Navarro County that are based on the use of the restraint chair. This

failure is sufficient of itself to support summary judgment. *See Little*, 37 F.3d at 1076

(holding that summary judgment is mandatory if plaintiff fails to meet summary judgment

burden).

First, Byers has failed to present sufficient evidence to enable a reasonable trier of fact

to find a policy or custom of excessive force. *See, e.g., Valle*, 613 F.3d at 541-42;

*Piotrowski*, 237 F.3d at 579. Regarding a policy, a reasonable trier of fact could not find

that Navarro County instituted a policy that permitted or authorized the use of excessive

force. In fact, the Manual's policy regarding use of force and of deadly force supports an

---

"five different [Constitutional violations] deriving from excessive force," P. App. 34, in
apparent reference to the five instances discussed above, one of which is the alleged jaw
injury. Although she states this at the outset, she neglects to brief the claim.

opposite finding because it directs officials *not* to use excessive force.  *See* P. App. 209

(directing officers that "No more force than is necessary and essential is [to be] used to

accomplish the desired purpose and to provide for the safety of personnel").  Byers does not

dispute the existence of the Manual or the constitutionality of its contents.

Regarding a custom, Byers may have suggested the existence of a custom in the facts

section of her brief by stating that "[p]rior and subsequent to the injury to the Plaintiff by

Lieutenant Holloway, . . . Holloway had a known history of violating rules and policy that

was overlooked and 'fixed' by those in charge, including other instances of excessive force."

P. Br. 18.[38]  The cited evidence, however, does not support a finding that the "instances"

---

[38]In support of this proposition, Byers cites to "Tab I (and especially 171, 191, 192);
Tab P at 336" of her appendix.  Tab I includes pages 162-193.  This court has specifically
rejected past attempts to cite large blocks of appendix pages.  *See, e.g., Akop v. Goody Goody
Liquor, Inc.*, 2006 WL 119146, at *3 n.4 (N.D. Tex. Jan. 17, 2006) (Fitzwater, J.).  It is well
settled that the court is not obligated to comb the record in search of evidence that will permit
a nonmovant to survive summary judgment.  *See, e.g., Adams v. Travelers Indem. Co.*, 465
F.3d 156, 164 (5th Cir. 2006).  "Rule 56 does not impose a duty on the district court to sift
through the record in search of evidence to support a party's opposition to summary
judgment."  *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 463 (5th Cir. 1996) (citing *Jones v.
Sheehan, Young & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996)).  "Rule 56, therefore,
saddles the non-movant with the duty to 'designate' the specific facts in the record that create
genuine issues precluding summary judgment, and does not impose upon the district court
a duty to survey the entire record in search of evidence to support a non-movant's
opposition."  *Jones*, 82 F.3d at 1338 (citing cases).  Moreover, under N.D. Tex. Civ. R.
56.5(c), "When citing materials in the record, as required by Fed. R. Civ. P. 56(c)(1)(A) or
(B), a party must support each assertion by citing each relevant page of its own or the
opposing party's appendix."  *Id.*  "A district court's decision on summary judgment is largely
controlled by what the parties presented.  If somewhere in a record there is evidence that
might show a dispute of material fact, the district court needs to be pointed to that evidence
as opposed to having to engage in an extensive search."  *Hernandez v. Yellow Transp., Inc.*,
___ F.3d ___, 2012 WL 400569, at *3 (5th Cir. Feb. 9, 2012) (on rehearing) (citing Rule
56(c); *Jones*, 82 F.3d at 1338).

were sufficiently persistent and widespread to rise to the level of a custom.  *See Piotrowski*, 237 F.3d at 579.  Instead, before the alleged jaw injury, Holloway was reprimanded or warned for driving with "an unauthorized rider in [the] county vehicle," P. App. 189, and "giving the inmate(s) smokeless tobacco," *id.* at 192.  Neither involved the alleged use of excessive force.  And after the alleged jaw injury, Holloway was placed on probation in March 2009 for violating the Manual's sexual harassment policy, and then terminated in June 2009 for violating the Manual's use of force policy by shooting two inmates with a pepper ball gun.  This evidence would only enable a reasonable trier of fact to find that Navarro County in fact *disciplines* Sheriff's Department employees found to have violated policies contained in the Manual, not that it has a custom of overlooking or fixing policy violations.  Thus the alleged jaw injury stands alone as a single incident, and a single incident can only give rise to municipal liability if the actor was a final policymaker.  *See, e.g., Valle*, 613 F.3d at 542.  There is no basis in the record to conclude that Holloway was a final policymaker.

Second, Byers has not introduced any evidence regarding a final policymaker—as opposed to a mere decisionmaker—who had actual or constructive knowledge of this "custom."  *See id.* at 541-42; *cf. Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 167-68 (5th Cir. 2010) ("*Zarnow II*") (after noting that plaintiff contended that chief of police was final policymaker, holding based on City's conduct and practice and that City impliedly delegated its policymaking authority to chief of police).

Third, Byers has not pointed to evidence that the "custom" was a moving force behind the alleged constitutional violation at issue in this case: the jaw injury.  *See, e.g., Piotrowski*,

237 F.3d at 580.  Even assuming that the injury was caused by Holloway's use of excessive force, there is no evidence concerning the culpability of the policymakers of Navarro County, which is necessary to prove that they acted with deliberate indifference to the risk of a constitutional violation.  *See Valle*, 613 F.3d at 542.

The court therefore holds that Navarro County is entitled to summary judgment dismissing Byers' claim to the extent it is based on Holloway's alleged use of excessive force.

## X

The court now turns to Byers' claim against Navarro County for failing to train its officials on the proper use of restraint chairs.

## A

Failure to train is a separate theory of municipal liability, *see, e.g., Zarnow II*, 614 F.3d at 170, but the same standard applies both to a failure to train claim and to a municipal liability claim, *see, e.g., Valle*, 613 F.3d at 544 (citing *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005)).  To establish this claim, Byers must prove that "(1) the training procedures were inadequate; (2) the [County's] policymaker was deliberately indifferent in adopting the training policy; and (3) the inadequate training policy directly caused [Byers'] injury."  *Carnaby v. City of Hous.*, 636 F.3d 183, 189 (5th Cir. 2011).[39]

---

[39]*Carnaby* states that it is unclear "whether a municipality can ever be held liable for [failing] to train its officers adequately where the officers did not commit any constitutional violation."  *Carnaby*, 636 F.3d at 189.  It is clear, however, that to satisfy the second prong and prove that the municipality acted with deliberate indifference, the plaintiff must generally

- 43 -

B

Byers posits that Navarro County acted with deliberate indifference in failing to train

its officials in the proper use of restraint chairs.  To support her claim, Byers asserts that

"[t]here was obviously no training [regarding the proper use of restraint chairs] as no one

really could say with certainty how long an inmate should be in it," P. Br. 35; that

"Defendants did not point to . . . certificates showing training in the use of the restraint

chair," *id.* at 45; and that "[t]here is no evidence of any training as to the record-keeping" that

is required under 37 Tex. Admin. Code § 273.6 (2012), P. Br. 45.  Byers contends that this

demonstrates deliberate indifference because Navarro County provided restraint chairs but

failed to train the officers regarding their proper use, when training was necessary to protect

against injury in light of the obligations of § 273.6 and the manufacturer's warning that users

not leave "detainees . . . in the Emergency Restraint Chair for more than two hours."  P. App.

211.

As evidence of training, Navarro County cites the deposition testimony of Sheriff

---

"show a pattern of violations and that the inadequate training or supervision [was] 'obvious and obviously *likely to result in a constitutional violation.*'"  *See Brown v. Callahan*, 623 F.3d 249, 255 (5th Cir. 2010) (emphasis added) (quoting *Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005)); *see also, e.g., Benavides v. Cnty. of Wilson*, 955 F.2d 968, 972 (5th Cir. 1992) (explaining that municipality acts with deliberate indifference if "in light of the duties assigned to specific officers or employees, the need for more or different training is so obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need") (quoting *City of Canton*, 489 U.S. at 390).  In other words, even if it is not necessary to show that the failure to train resulted in a violation of the plaintiff's constitutional rights, the plaintiff must generally show a pattern of violations and an obvious and likely risk of a constitutional violation.

Leslie Cotten ("Sheriff Cotten").  Sheriff Cotten testified that officers undergo field training in the jail and, within one year of being hired, are sent to an academy for training.  According to Sheriff Cotten, the Texas Jail Commission "sets up the curriculum for the training, and it's certified by" the Texas Commission on Law Enforcement Officer Standards and Education ("TCLEOSE").[40]  Ds. App. 8.  And the Texas Jail Commission inspects the jail's operations annually.[41]

## C

The court holds that Navarro County is entitled to summary judgment dismissing Byers' failure-to-train claim.

First, Byers has failed to "allege with specificity how a particular training program is defective," as required under the first prong.  *See Zarnow II*, 614 F.3d at 170 (quoting *Roberts*, 397 F.3d at 293); *cf. Valle*, 613 F.3d at 544-46 (holding that plaintiffs presented sufficient evidence in response to summary judgment to raise jury question on whether

---

[40]Although Sheriff Cotten testified in his deposition that the training was certified by "Texas Commission on Law Enforcement Education and Standards," it is clear that he meant "Texas Commission on Law Enforcement Officer Standards and Education," as shown by the abbreviated use of "TCLEOSE."

[41]In its motion for summary judgment, Navarro County states that "the jail deputies hired at the Navarro County Sheriff's Office held the appropriate certifications for employment in accordance with the required standards of [TCLEOSE]."  Ds. Br. 12.  It cites no evidence, however, to support this assertion.  The court therefore declines to rely on the unsupported, conclusory statement contained in Navarro County's motion.  *See Jones v. Alfred*, 353 Fed. Appx. 949, 951-52 (5th Cir. 2009) (affirming summary judgment as to remainder of plaintiff's claim given that "[i]n each instance, he either relies on 'conclusory allegations, improbable inferences, and unsupported speculation' for support, or fails to brief the issue sufficiently.") (citations omitted).

failure to implement policy constituted policy of failing to adequately train based on evidence that City considered, but chose not to implement, relevant policy).  In *Zarnow II* the court held that the plaintiff provided insufficient evidence that the municipality's training procedures were inadequate because the plaintiff's "only evidence" was "that the officers expressed an unlawful interpretation of" the Fourth Amendment's plain view doctrine. *Zarnow II*, 614 F.3d at 170.  The court noted that the plaintiff "does not reference any evidence concerning the procedures used to train the officers, the officers' qualifications, or direct references to the particular inadequacies of their Fourth Amendment training."  *Id.* Likewise, although Byers bears the burden of proving that the training was inadequate, her only evidence is that several officials were unaware of how long a detainee could properly be left in a restraint chair.  But the mere fact that the officials who were deposed could not recall the allowable time to leave a pretrial detainee in a restraint chair would not enable a reasonable trier of fact to find that there was inadequate training.  Byers then erroneously shifts her burden to Navarro County by asserting that it failed to point to certificates with the relevant training when it is Byers' obligation to demonstrate the inadequacy of the training. And Byers' assertions that there is "no evidence" as to training regarding, for instance, record-keeping for restraint chair use further demonstrates that she has not met her burden of alleging with specificity the defects in Navarro County's training.  Byers also neglects to respond to evidence that officials underwent field training and academy training, both of which were organized by the Texas Jail Commission and certified by TCLEOSE.  Based on the summary judgment record, a reasonable trier of fact could not find that the training

included in these programs was defective.

Second, Byers has failed to introduce evidence that would enable a reasonable trier of fact to find that Navarro County's policymaker acted with deliberate indifference regarding training.  It is difficult for Byers to prove that failure to train would result in a constitutional violation, given that *Blakeney* has already decided that an official's actions in a similar context did not contravene the Due Process Clause.  *See Blakeney*, 89 Fed. Appx. at 898-99.[42]  And even if placing a combative pretrial detainee in a restraint chair for extended periods violates the Due Process Clause, Byers does not point to evidence to support a finding that Navarro County was deliberately indifferent to such a potential for constitutional violations.  This is because Byers has not introduced evidence that would enable a reasonable trier of fact to find a "pattern of violations," or that inadequate training was "obviously likely to result in a constitutional violation."  *See Brown v. Callahan*, 623 F.3d 249, 255 (5th Cir. 2010); *see also Carnaby*, 636 F.3d at 190 (concluding that plaintiff pointed to no evidence that showed that policymakers had knowledge that current training was insufficient, because evidence was not specific to current training program); *Valle*, 613 F.3d at 547-48 (although concluding that City was aware of potential for constitutional violations, holding that evidence of deliberate indifference was insufficient given that

_____

[42]Although Byers recites § 273.6 of the Texas Administrative Code to argue that Navarro County's training did not comply with Texas law, "compliance with state requirements [is] a factor counseling against a 'failure to train' finding," but it is only one factor.  *See Zarnow II*, 614 F.3d at 171.  Even assuming that Navarro County failed to adhere to the requirements of § 273.6, this does not necessarily establish a constitutional violation.

- 47 -

plaintiff did not link potential for constitutional violations to pattern of actual violations); *cf.*

*Thompson*, 245 F.3d at 462 (in examining qualified immunity for failure to provide training

regarding delirium tremens, concluding that even though case law clearly established that

detention facilities prohibited policies precluding care of serious medical needs, such as

delirium tremens, it did not necessarily require *medical training* on such needs).   Byers

asserts that "[t]his lack of . . . training rises to the level of deliberate indifference . . . because

the policymakers here had a choice to train or not to train.  They chose not to train."  P. Br.

45.   But a reasonable trier of fact could not find that Navarro County considered this

"choice" of training regarding restraint chairs but then rejected it based on this

unsubstantiated and conclusory assertion. *See Morris*, 144 F.3d at 380; *cf. Valle*, 613 F.3d

at 544–547 (although ultimately finding no deliberate indifference, noting that City

considered but chose not to implement a relevant proposal).

Navarro County is therefore entitled to summary judgment dismissing this claim.

## XI

The court now turns finally to Byers' claim that Navarro County ratified Holloway's

exercise of excessive force.

## A

"[I]f 'authorized policymakers approve a subordinate's decision and the basis for it,

their ratification [will] be chargeable to the municipality because their decision is final.'"

*World Wide St. Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 755 (5th Cir.

2009) (quoting *Praprotnik*, 485 U.S. at 127).  Ratification, however, has been limited to

apply to "extreme factual situations." *Id.* (quoting *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 848 (5th Cir. 2009); *Coon v. Ledbetter*, 780 F.2d 1158, 1161 (5th Cir. 1986)). "[U]nless the subordinate's actions are sufficiently extreme—for instance, an obvious violation of clearly established law—a policymaker's ratification or defense of his subordinate's actions is insufficient to establish an official policy or custom." *Id.* (citing *Peterson*, 588 F.3d at 848; *Grandstaff v. City of Borger, Tex.*, 767 F.2d 161, 170 (5th Cir. 1985)).

In support of this claim, Byers contends that the deposition testimony of Chief Deputy Mike Cox ("Chief Deputy Cox") and Captain Nichols "indicates that there is more going on than they will say specifically." P. Br. 46. Regarding Chief Deputy Cox, it appears that Byers is referring to an exchange that occurred in his deposition, addressed in the facts section of her brief, in which her counsel asked Chief Deputy Cox, "Did you know when the incident, involving Jennifer Byers[,] occurred?" and he responded, "It depends on *which incident* you speak of, sir." P. App. 338 (emphasis added). Byers also alleges that Captain Nichols was "used to 'fixing' Holloway's mishaps." P. Br. 46.

## B

Because it is not clear whether Navarro County has requested summary judgment as to this claim, the court raises *sua sponte* that Navarro County is entitled to summary judgment based on an absence of evidence as to each essential element of ratification.

First, Byers has failed to address whether Chief Deputy Cox, Captain Nichols, or another official who allegedly ratified Holloway's excessive force is an "authorized

policymaker" of Navarro County. *See World Wide St. Preachers*, 591 F.3d at 755. Proof of this element is necessary because ratification by an authorized policymaker is required. *See id.*

Second, ratification applies only to "extreme factual situations," such as "obvious violation[s] of clearly established law." *See id.* Byers has provided no basis for a reasonable trier of fact to find that this case is sufficiently extreme. For example, even assuming that Holloway used excessive force in causing the alleged jaw injury, the court has already held that Holloway is entitled to qualified immunity because a reasonable official could have concluded that holding Byers for 10 to 15 seconds, and using the force alleged here, was necessary to place her in a restraint chair and to prevent her from injuring the jail officials who were attempting to place her in the chair.

Third, assuming that Holloway used excessive force, a reasonable trier of fact could not find that an authorized policymaker approved both Holloway's decision and the basis for it. Byers does not allege that a specific policymaker approved Holloway's exercise of, or the basis for, excessive force that caused the alleged jaw injury. Instead, she appears to rely on Chief Deputy Cox's deposition to argue that there is a scheme or pattern of excessive force known by Navarro County's policymakers. But a reasonable trier of fact could not draw this conclusion from Chief Deputy Cox's testimony. Instead, the trier of fact could only reasonably find that Chief Deputy Cox was requesting clarification regarding the scope of the question in order to correctly answer it. Byers also contends that Captain Nichols was "used to 'fixing'" Holloway's violations, and she refers to a conversation that occurred in

March 2009, i.e., almost one year after the alleged jaw injury.  This conversation took place a few days after Holloway was found to have violated the Manual's sexual harassment policy for an incident that Captain Nichols had reported.[43]  According to Captain Nichols, Holloway came to his office and asked him "why I reported what I was told . . . and didn't come to him so we could *fix* it."  P. App. 171 (emphasis added).  Captain Nichols rejected this idea, stating: "I report things to the Chief and Sheriff and they are the only persons that I report my findings to."  *Id.*  In other words, it was Holloway, *not Captain Nichols*, who suggested that the problem could have been "fixed," and Captain Nichols rejected this suggestion.  There is no basis for a reasonable trier of fact to find that Captain Nichols approved of Holloway's decisions and the bases for them.

Byers also notes in a footnote in her brief a May 2009 incident in which it was determined that Holloway had violated the Manual's use of force policy for shooting two other inmates with a pepper ball gun.  Contrary to Byers' assertion, a reasonable trier of fact could not find that a policymaker approved of Holloway's decision and the basis for it, given that Holloway *was terminated* in June 2009 for these actions.  And, to the extent that Byers is arguing that Navarro County ignored Holloway's use of excessive force against Byers by not adequately investigating the matter, "the mere failure to investigate the basis of a subordinate's discretionary decisions does not amount to a delegation of policymaking

---

[43]Holloway was sanctioned in the form of "five days off without pay," placed on a "six-month probationary period," and required to "complete a sensitivity training course." P. App. 170.

authority." *See Peterson*, 588 F.3d at 848 n.2 (quoting *Praprotnik*, 485 U.S. at 130).

The court therefore raises *sua sponte* that Navarro County is entitled to summary judgment as to Byers' claim that Navarro County ratified Holloway's exercise of excessive force.  If Byers desires to oppose summary judgment on this basis, she must file a supplemental brief and supporting appendix within 30 days of the date this memorandum opinion and order is filed.[44]  If she does not, the court will grant summary judgment in favor of Navarro County dismissing this claim.  If she does respond, the court will decide whether to request a reply brief from Navarro County.

## XII

The court considers next Byers' claim for failure to protect, which she asserts only against the individual defendants.

## A

Byers cites the following evidence to support this claim.  For a period of time, Byers and Julia Gutierrez ("Gutierrez") were housed together in cell "F-3."  According to Byers, she was detained in the same cell even though Gutierrez "had a known propensity to fight and engage in altercations with other inmates."  P. Br. 5.  On April 3, Gutierrez struck Byers multiple times, resulting in "a tiny avulsion fracture at the very tip of the nasal bone with only [a] tiny separation."  P. App. 107.  Byers and Gutierrez were separated for several days,

---

[44]These pleadings are not in addition to other pleadings permitted by this memorandum opinion and order.  They must be part of the same pleadings and are subject to total page limitations that apply to a single brief.

during which Byers filed charges against Gutierrez for criminal assault.[45]  Gutierrez was then

returned to cell "F-3" with Byers.

Byers also cites two sick call requests.  In one, she stated, in relevant part, that on

April 14: "The girl who assaulted me & broke my nose came back in tank today so I'm very

uneasy — very depressed."  *Id.* at 119.  In the second, she stated on April 26 as one of

several complaints: "The girl who assaulted me is in the same tank so my anxiety is extra

now."  *Id.* at 121.  Byers also filed an inmate grievance form, stating: "4/21 — Had to come

Back in tank with person had a fight with Very uncomfortable — Very intense — She's next

to me in a bunk."  *Id.* at 117.[46]

B

Because the individual defendants have properly raised the defense of qualified

immunity, the burden shifts to Byers to prove, first, a violation of a constitutional right, and,

second, that the right was clearly established at the time and in the specific context of the

alleged misconduct.  *See, e.g., Saucier*, 533 U.S. at 201; *McClendon*, 305 F.3d at 322-23.

---

[45]Byers contends that she filed criminal assault charges, and there is evidence of an "Incident/Offense Report" regarding the incident.  She also alleges that these charges resulted in a conviction, but she points to no evidence to support this allegation.

[46]Byers also refers to Holloway's deposition testimony in which he agreed with the statement that "they're not supposed to assign a timid or shy inmate to a cell with a violent inmate."  P. App. 444.  In this testimony, Holloway added that "if they're timid and shy but they had a murder conviction, they're going to be the highest you can have."  *Id.*  Byers appears to rely on this statement to suggest that this is an admission of misconduct.  But the evidentiary basis for this supposed conclusion by Holloway is missing—i.e., that Byers was in fact a "timid or shy inmate."  Moreover, Byers cannot rely on Holloway's belief about what was the standard, and that his actions violated it, if this was not the standard.

It is well recognized that jail officials have a constitutional duty derived from the Due Process Clause to protect pretrial detainees from violence at the hands of other detainees.[47] *See Brown v. Harris Cnty., Tex.*, 409 Fed. Appx. 728, 730 (5th Cir. 2010) (per curiam); *Smith v. City of Tupelo, Miss.*, 281 Fed. Appx. 279, 283 (5th Cir. 2008) (per curiam) (quoting *Johnston v. Lucas*, 786 F.2d 1254, 1259 (5th Cir. 1986)).   Not every injury, however, "suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety."   *Farmer*, 511 U.S. at 834. "Constitutional challenges by pretrial detainees may be brought under two alternative theories: as an attack on a 'condition of confinement' or as an 'episodic act or omission.'" *Shepherd v. Dall. Cnty.*, 591 F.3d 445, 452 (5th Cir. 2009) (citing *Hare v. City of Corinth, MS.*, 74 F.3d 633, 644-45 (5th Cir. 1996) (en banc)).   Because Byers "faults specific jail officials for their acts or omissions," *see id.*, her claim is an attack on an episodic act or omission.

To prevail on her claim, Byers must show that she "was detained 'under conditions

---

[47]Unlike convicted state prisoners who are protected under the Eighth Amendment's prohibition of cruel and unusual punishment, *see, e.g., Estelle v. Gamble*, 429 U.S. 97, 104 (1976), "[t]he constitutional rights of a pretrial detainee, on the other hand, flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment" when it comes to "rights to basic needs such as medical care and safety," *see Hare v. City of Corinth, MS.*, 74 F.3d 633, 639 (5th Cir. 1996) (en banc).   And although states can punish convicted prisoners, they "cannot punish a pretrial detainee." *Id.* (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)).   "[A] pretrial detainee's due process rights are . . . 'at least as great as the Eighth Amendment protections available to a convicted prisoner.'" *Id.* (quoting *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)).   Thus in examining this claim, the court also relies on precedent established in failure-to-protect claims under the Eighth Amendment.

posing a substantial risk of serious harm and that the defendants were deliberately indifferent to [her] need for protection.'" *Smith*, 281 Fed. Appx. at 283 (brackets and internal quotation marks omitted) (quoting *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995)); *see also, e.g., Brown*, 409 Fed. Appx. at 730 ("In a case alleging an 'episodic act or omission' of a jail official, the plaintiff must show that the official acted with deliberate indifference to the detainee's rights"). The court applies an objective standard when determining whether Byers has met her burden of establishing the existence of a substantial risk of serious harm. *See Pugh v. Rockwall Cnty., Tex.*, 2000 WL 730426, at *7 (N.D. Tex. May 19, 2000) (Solis, J.) (citing *Payne v. Collins*, 986 F. Supp. 1036, 1052 (E.D. Tex. 1997)); *see also Farmer*, 511 U.S. at 834 (requiring under Eighth Amendment that deprivation be "objectively, 'sufficiently serious'") (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). But when deciding whether the individual defendants were deliberately indifferent, the court applies a subjective standard. *Pugh*, 2000 WL 730426, at *8 (citing *Payne*, 986 F. Supp. at 1052); *see also Brown*, 409 Fed. Appx. at 730 ("Deliberate indifference requires a showing of 'subjective recklessness as used in the criminal law[.]'") (quoting *Farmer*, 511 U.S. at 837). For an official to act with deliberate indifference, he must know of, yet disregard, the substantial risk faced by the pretrial detainee. *Brown*, 409 Fed. Appx. at 730 (quoting *Farmer*, 511 U.S. at 837). Knowledge requires awareness of the facts from which the inference can be drawn that a substantial risk of serious harm exists, and that the inference is actually drawn. *See id.* (quoting *Farmer*, 511 U.S. at 837); *Smith*, 281 Fed. Appx. at 283 (same). Even if a defendant knows of the risk, he must also know of ways to reduce the harm but knowingly

- 55 -

or recklessly decline to act. *See Pugh*, 2000 WL 730426, at *8 (citing cases). "[A] jail official will not ordinarily be held liable for attempting to remedy a constitutional deprivation even if that attempt fails to avoid the harm." *Id.* (citing *La Marca v. Turner*, 995 F.2d 1526, 1536 (11th Cir. 1993) ("[I]f an official attempts to remedy a constitutionally deficient prison condition, but fails in that endeavor, he cannot be deliberately indifferent unless he knows of, but disregards, an appropriate and sufficient alternative.")).

C

Byers contends that the individual defendants failed to protect her by (1) initially placing her in the cell with Gutierrez, despite her known propensity for violence, and (2) returning Gutierrez to the cell after she was removed, despite the recent altercation and Byers' filing of a criminal assault charge.

The individual defendants did not move for summary judgment as to this claim. This likely occurred because, although Byers alleged the pertinent facts in her complaint, she failed to specifically identify that she was asserting the claim against the individual defendants. Accordingly, the court raises *sua sponte* that the individual defendants and O'Pry are entitled to summary judgment based on qualified immunity dismissing Byers' failure-to-protect claim.

1

Regarding the initial placement of Byers and Gutierrez in the same cell, the court raises *sua sponte* that Byers has failed, under the first prong of the qualified immunity analysis, to provide evidence that demonstrates a violation of a constitutional right. Although

"[o]ur society . . . does not tolerate physical assaults," *Horton v. Cockrell*, 70 F.3d 397, 401

(5th Cir. 1995) (per curiam), and such assaults can constitute serious harm, *see id.* (deeming

assaults a type of "'imminent danger' against which a prison official must protect"), Byers

has not pointed to evidence in the summary judgment record that would support a reasonable

finding that Byers faced a *substantial risk* of an assault.[48] *See Smith*, 281 Fed. Appx. at 283;

*cf. Horton*, 70 F.3d at 399, 401 (in deciding that there was an "imminent danger" of serious

harm under Eighth Amendment, noting that inmate received threats, reported the threats, and

was assaulted without provocation by another inmate with previous history of assaults).

Moreover, Byers has not introduced evidence that would enable a reasonable trier of fact to

find deliberate indifference on the basis that each individual defendant and O'Pry knew of,

but disregarded, a substantial risk of serious harm.  *See, e.g., Brown*, 409 Fed. Appx. at 730-

31 (holding that officer was at most negligent because she told inmate to move mattress to

place she could best observe him and, although she forgot to alert next deputy, detainee had

expressed only a vague fear of "problems"); *Smith*, 281 Fed. Appx. at 283-84 (affirming

summary judgment against failure-to-protect claim because pretrial detainee failed to

---

[48]In support of such a finding, Byers states, in a conclusory manner, that Gutierrez had a "known propensity to fight and engage in altercations with other inmates" and cites solely her cell movement history.  P. Br. 5.  Gutierrez's cell movement history, however, provides no support for this allegation, considering that before April 3—the date of their altercation—it documents only that Gutierrez was sent to a separation cell on February 11 for "refus[ing] to put on her jum[p]er," returned to the population on February 22, and perhaps was sent to separation again for an unknown reason, because on March 1 it states she was "returned from sep[a]ration" without stating when and why she was sent there in the first place.  P. App. 96.  A reasonable trier of fact could not find from this evidence alone that Byers faced a substantial risk of serious harm.

demonstrate that "[d]efendants knew of and disregarded an excessive risk to his health or safety"; among other things, detainee did not present evidence that he had complained to officials about threats); *Downey v. Denton Cnty., Tex.*, 119 F.3d 381, 386 (5th Cir. 1997) (affirming judgment in favor of one officer because no evidence of knowledge).[49]

Although Byers presents arguments in an attempt to satisfy the second prong of the qualified immunity analysis, they are insufficient, and the court also raises summary judgment *sua sponte* as to this prong. Her statements that "this is a clearly established right and was at the time of Plaintiff's injuries," and that "[t]he dates on the case law cited above proves this," P. Br. 40, are inadequate because she must demonstrate the clarity of the law at the time and in the particular situation that the jail officials faced, not merely refer to case law that generally announced the constitutional right. *See, e.g., Lytle*, 560 F.3d at 417 (holding that focus was not on whether right was "clearly established in a general sense" but whether "the right to be free from the degree of force employed in a particular situation may not have been clear to a reasonable officer at the scene). And her references to 37 Tex.

---

[49]After reciting the law regarding failure-to-protect claims, Byers posits that she "has met her burden of raising a genuine issue of material fact" "by showing that the officials in question . . . knew of ways to reduce the harm but recklessly declined to act," and that "Defendants did not provide any evidence of what they did to alleviate any of the risks at the jail that contributed to [her] attack." P. Br. 39. A conclusory assertion that there is a genuine issue of material fact is insufficient to withstand a motion for summary judgment. *See, e.g., Morris*, 144 F.3d at 380. And it is Byers' burden, not the obligation of defendants, to introduce evidence that would enable a reasonable trier of fact to find that each defendant knew of and disregarded a substantial risk of serious harm. *See Smith*, 281 Fed. Appx. at 284 (holding that plaintiff failed to demonstrate that defendants "knew of and disregarded an excessive risk to his health or safety").

Admin. Code § 271.1 (2012) and her expert's opinion do not satisfy this burden.[50]

2

Regarding the return of Gutierrez to Byers' cell following the recent altercation and her filing of the criminal assault charge, the court raises *sua sponte* that the individual defendants and O'Pry are entitled to summary judgment because, based on the evidence that Byers offers, a reasonable trier of fact could not find a constitutional violation. The principal deficiency under this prong of the qualified immunity test is Byers' failure to identify in the summary judgment record evidence that each individual defendant and O'Pry actually knew of, but disregarded, the risk. *See, e.g., Smith*, 281 Fed. Appx. at 283-84; *Downey*, 119 F.3d at 386.[51] The standard is subjective, requiring evidence as to the culpability of each

---

[50]Byers contends in her brief that § 271.1 "sets forth guidelines for classifying inmates and housing minimum and maximum custody level inmates separately," P. Br. 40, but she provides no explanation concerning the relevance of this statement. It is unclear which provision of § 271.1 is pertinent to this case, whether and how the individual defendants violated that provision, and how a violation of the Texas Administrative Code supports a finding that a constitutional right was clearly established at the time and in the specific context of the alleged misconduct.

Byers also states that "Plaintiff's expert found this housing arrangement . . . inappropriate," and cites "Tab E-1" of her appendix, which spans pages 74 to 95. P. Br. 40. The court has already explained above, *see supra* note 38, why this method of citing the summary judgment record is insufficient.

[51]Byers uses the same conclusory and unsupported statements discussed *supra* at § XII(C)(1) and footnote 49 in support of a finding of deliberate indifference on this basis. The court has already determined that those statements are insufficient to overcome a motion for summary judgment.

Moreover, in its cursory examination of the summary judgment record, the court has located evidence that at least one of the officers in the Navarro County jail took precautions to protect Byers. Officer Jessica Adams documents that, on May 5, 2008, she was "watching [the] tank closely because of the Issues between Gutierrez and Byers." P. App. 115. If the

individual defendant, which has not been presented.  *See Pugh*, 2000 WL 730426, at *8.

Moreover, because Byers has failed to show that the right was clearly established at the time

and in the specific context of the alleged misconduct, the court raises summary judgment *sua*

*sponte* as to this prong of qualified immunity.

### D

In summary, the court raises *sua sponte* that the individual defendants and O'Pry are

entitled to summary judgment based on qualified immunity dismissing Byers' failure-to-

protect claim predicated on her initial and returned placement in the same cell as Gutierrez.

If Byers desires to oppose summary judgment on this basis, she must file a supplemental

brief and supporting appendix within 30 days of the date this memorandum opinion and order

is filed.[52]  If she does not, the court will grant summary judgment in favor of the individual

defendants and O'Pry dismissing this claim.  If she does respond, the court will decide

whether to request a reply brief from the individual defendants and O'Pry.

---

individual defendants took similar precautions, it would preclude a finding of deliberate
indifference because "a jail official will not ordinarily be held liable for attempting to remedy
a constitutional deprivation even if that attempt fails to avoid the harm."  *See Pugh*, 2000 WL
730426, at *8.

[52]These pleadings are not in addition to other pleadings permitted by this
memorandum opinion and order.  They must be part of the same pleadings and are subject
to total page limitations that apply to a single brief.

XIII

The court now turns to Byers' claim that Navarro County denied her medical and psychiatric care, in violation of the Due Process Clause.

A

Byers relies on two grounds in support of this cause of action: First, she alleges that she was denied adequate medical care—in particular, psychiatric care—because Navarro County only provided her ineffective medication for her depression. Second, she asserts that, after she sustained an injury to her jaw, Navarro County released her to avoid liability for necessary oral surgery.

B

In support of Byers' claim based on denial of psychiatric care, Byers states that, during her detention, she suffered from "panic attacks" and was "depressed, suicidal, and . . . bi-polar," for which she requested medical attention. P. App. 6. On March 31, at Holloway's request, a counselor from ADAPT met with Byers. In ADAPT's evaluation, it reported that Byers was at "Moderate Risk" for "Homicide/Danger to Others, Serious Self Neglect, Suicide/Danger to Self." *Id.* at 142. After this meeting, there is no evidence of subsequent action by ADAPT. Byers cites one sick call request in particular, dated April 21, following the meeting with ADAPT. In this request she complained of "a lot of anxiety," that she "[felt] like death would be better than living," that she "wish[ed she] could just die," and that she "[felt] like [she] need[ed] to be in [a] mental hospital." *Id.* at 148. Friedman, the nurse who examined Byers, testified that the jail does not have access to a psychiatrist,

- 61 -

and Byers did not receive such care. Instead, Dr. Shaw cared for Byers and prescribed medication.

According to Byers, "Defendants do not address this claim at all and have therefore waived it." P. Br. 40. This claim was left unaddressed, however, because Byers neither pleaded the foregoing facts in her complaint nor specified that a denial of medical care claim was being made on this basis. Byers alleged in her complaint that Navarro County "violated [her] constitutional right to medical care for injuries received while in the custody of law enforcement personnel." 2d Am. Compl. ¶ 40. This allegation suggests that Byers was referring to the alleged jaw injury, which the complaint focuses on so heavily; it does not indicate that Byers intended to base her claim on her requests for psychiatric care. "A party is not entitled to defeat summary judgment based on claims that have not been asserted as of the time the opposing party has filed a summary judgment motion." *Siddiqui v. Autozone W., Inc.*, 731 F.Supp.2d 639, 644-45 (N.D. Tex. 2010) (Fitzwater, C.J.). The court therefore dismisses Byers' claim based on the denial of psychiatric care.

## C

The court now turns to Byers' claim based on the failure to provide oral surgery for her jaw. Byers asserts that after Holloway injured her jaw and Dr. Shaw informed Navarro County that she required an oral surgery consultation, she was released from jail in order to avoid liability for the surgery.

At the outset, it is necessary to determine the type of claim alleged and the party against whom it is asserted. Although Byers does not explicitly state whether she is basing

the claim on a condition of confinement or an episodic act or omission, the law cited and the act complained of make clear that Byers is alleging a claim based on an episodic act or omission. *See Shepherd*, 591 F.3d at 452 (classifying claim that "faults specific jail officials for their acts or omissions" as episodic act or omission). It is more difficult, however, for the court to determine whether this claim is asserted only against Navarro County, or against the individual defendants and O'Pry as well, because her response does not identify the defendant against whom the claim is made. Having considered Byers' complaint, the court concludes that the claim is asserted only against Navarro County because she alleges that "The exercise of the established policy or custom of *Navarro County* . . . violated [her] constitutional right to medical care for injuries received while in the custody of law enforcement personnel," 2d. Am. Compl. ¶ 40 (emphasis added), and she does not specify that she is bringing the claim against any other defendant.[53]

A pretrial detainee is protected under the Due Process Clause from the denial of basic needs such as medical care. *See, e.g., Fields v. City of S. Hous., Tex.*, 922 F.2d 1183, 1191 (5th Cir. 1991). To prevail against Navarro County on a denial of medical care claim, Byers must first show that an "official[] 'acted or failed to act with deliberate indifference to the detainee's needs.'" *See Shepherd*, 591 F.3d at 452 (quoting *Hare*, 74 F.3d at 648). To act

---

[53]Moreover, the evidence in the summary judgment record does not appear to support a claim against the individual defendants or O'Pry for denial of medical care because there appears to be no evidence regarding whether they were involved in the relevant decisions (e.g., to release Byers) and acted with deliberate indifference in making the decisions. *See Shepherd*, 591 F.3d at 452.

- 63 -

with deliberate indifference, the official must know of, but disregard, the substantial risk faced by the pretrial detainee. *See Farmer*, 511 U.S. at 837. Knowledge requires awareness of the facts from which the inference can be drawn that a substantial risk of serious harm exists, and that the inference is actually drawn. *Id.* "To make a showing of deliberate indifference, the inmate must submit evidence that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *McCarty v. Zapata Cnty.*, 243 Fed. Appx. 792, 794 (5th Cir. 2007) (per curiam) (citing *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)). Moreover, to establish Navarro County's liability, Byers must "point[] derivatively to a policy, custom, or rule (or lack thereof) of the municipality that permitted or caused the act or omission." *See Shepherd*, 591 F.3d at 452 (quoting *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997) (en banc)). "There must be a 'direct causal link' establishing that 'an official policy promulgated by the County's policymaker was the moving force behind, or actual cause of, the constitutional injury.'" *Brown*, 409 Fed. Appx. at 730 (brackets omitted) (quoting *James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009)).

Navarro County did not specifically identify this claim in its motion for summary judgment. It brought this claim up for the first time in its reply brief, stating: "Plaintiff has provided no evidence demonstrating that Defendant Navarro County's specific policies or procedures . . . denied [Byers] her medical attention concerning the alleged injuries from the alleged use of force." Ds. Reply 4. The court therefore raises *sua sponte* that Navarro

County is entitled to summary judgment as to the failure to provide medical care for the alleged jaw injury.

Byers asserts that she "was discharged or released from jail to avoid the liability of the Defendants to pay the Plaintiff's medical expenses." P. Br. 12. Even assuming that Dr. Shaw notified Navarro County of Byers' need for an oral surgery consultation prior to her release,[54] there is no evidence that any official of Navarro County acted with deliberate indifference to Byers' constitutional rights. This is so because Byers does not identify even one official who subjectively knew of her medical needs, yet disregarded her constitutional rights by deciding to release her to avoid providing needed oral surgery. *See McCarty*, 243 Fed. Appx. at 794 (holding that there was no evidence that defendants refused to treat plaintiff). A pretrial detainee's release can be the result of various factors, and Byers points to no evidence that would enable a reasonable trier of fact to find that this decision was intended to evade liability for the treatment. And assuming *arguendo* that Byers has satisfied this first prong, there is no evidence that would enable a reasonable trier of fact to find a policy, custom, or rule that was the moving force behind this alleged constitutional injury. *See Shepherd*, 591 F.3d at 452; *Brown*, 409 Fed. Appx. at 730.

---

[54]The only evidence in the summary judgment record that supports this proposition is Dr. Shaw's deposition testimony. In response to a question asking whether "the decision to release [Byers was] made after you had informed Navarro County that you felt like she needed an oral surgery consultation," he responded, "Probably, yes." P. App. 485. Viewing the evidence in the light most favorable to Byers, the court assumes that a reasonable trier of fact could find that Dr. Shaw alerted Navarro County regarding the oral surgery consultation before Byers was released.

D

In summary, the court dismisses Byers' claim based on the denial of psychiatric care, and it raises *sua sponte* that Navarro County is entitled to summary judgment for the claim of denial of medical care for the alleged jaw injury.  If Byers desires to oppose summary judgment on this basis, she must file a supplemental brief and supporting appendix within 30 days of the date this memorandum opinion and order is filed.[55]  If she does not, the court will grant summary judgment in favor of Navarro County dismissing this claim.  If she does respond, the court will decide whether to request a reply brief from Navarro County.

XIV

Byers also alleges pendent claims for assault, battery, and other state-law causes of action against all defendants.  Defendants move for summary judgment dismissing these claims.

If, after Byers has had the opportunity to respond, the court grants summary judgment dismissing all of Byers' federal law claims, only her state-law claims will remain.  The court can decline to exercise supplemental jurisdiction where the claims that permitted original jurisdiction have dropped out of the case.  *See* 28 U.S.C. § 1367(c)(3) (providing that court "may decline to exercise supplemental jurisdiction" where it has "dismissed all claims over which it has original jurisdiction").  If the court dismisses the state-law claims without

---

[55]These pleadings are not in addition to other pleadings permitted by this memorandum opinion and order.  They must be part of the same pleadings and are subject to total page limitations that apply to a single brief.

- 66 -

prejudice, Byers remains free to file the claims in state court. *See* § 1367(d) (tolling state statute of limitations for at least 30 days when court dismisses claim over which it declines to exercise supplemental jurisdiction). "This court has noted on prior occasions that it is not a court of general jurisdiction and that it has no particular interest, or expertise, in litigating state-law claims." *Kibby v. Chief Auto Parts Inc.*, 1999 WL 135261, at *6 (N.D. Tex. Mar. 4, 1999) (Fitzwater, J.) (citing *Sowell v. City of Coppell*, No. 3:96–CV–0666–D, slip op. at 11 (N.D. Tex. Oct. 15, 1997) (Fitzwater, J.)). "State courts are better fora to decide issues of state law." *Id.* Because the court will probably dismiss Byers' state-law claims if it later dismisses the remaining federal law claims, the court declines now to consider the part of defendants' summary judgment motion that addresses Byers' state-law claims.

\* \* \*

For the reasons explained, the court grants in part defendants' March 25, 2011 motion for partial summary judgment, and in part raises *sua sponte* that defendants are entitled to

summary judgment dismissing her remaining federal-law claims.[56]   The court defers consideration of her pendent state-law claims.

**SO ORDERED.**

March 1, 2012.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE

---

[56]In Byers' response, she renews her request for leave to redepose several witnesses and to take depositions.  The court has already addressed this issue in a prior opinion, *see Byers v. Navarro County*, 2011 WL 4367773, at *1 (N.D. Tex. Sept. 19, 2011) (Fitzwater, C.J.), and declines to revisit it.

- 68 -